# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DREW STERRETT,

Plaintiff;

v.

HEATHER COWAN, JAY WILGUS,
STACY VANDER VELDE, THEODORE
SPENCER, SUSAN PRITZEL, MIKIKO
SENGA, E. ROYSTER HARPER,
MALINDA MATNEY, ANTHONY
WALESBY, and LAURA BLAKE JONES,
employees of the University of Michigan, in
their personal and official capacities,

Defendants.

Case No: 2:14-cv-11619

Hon. Denise Page Hood

| DEBORAH GORDON LAW | MILLER, CANFIELD, PADDOCK AND STONE, PLC |
|---|---|
| Gordon, Laughbaum & Prescott | Thomas W. Cranmer (P25252) |
| Deborah L. Gordon (P27058) | David O'Brien (P65532) |
| Carol A. Laughbaum (P41711) | Paul D. Hudson (P69844) |
| 33 Bloomfield Hills Pkwy, Suite 220 | 840 West Long Lake Road, Suite 200 |
| Bloomfield Hills, MI 48304 | Troy, Michigan 48098 |
| dgordon@deborahgordonlaw.com | Telephone: (248) 879-2000 |
| claughbaum@deborahgordonlaw.com | cranmer@millercanfield.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spencer, Susan Pritzel, E. Royster Harper, Malinda Matney, Anthony Walesby, and Laura Blake Jones* |

## MOTION TO DISMISS

Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spencer, Susan Pritzel, E. Royster Harper, Malinda Matney, Anthony Walesby, and Laura Blake Jones ("Defendants")[1] move to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for failure to state a claim and for lack of subject-matter jurisdiction under the doctrine of qualified immunity.

1.    In support of this motion, Defendants respectfully refer the Court to the accompanying brief in support.

2.    Pursuant to Local Rule 7.1(a), counsel for Defendants sought concurrence from Plaintiff's counsel on May 20, 2014, explaining the nature of the motion and its legal bases.  Plaintiff's counsel did not respond to the request for concurrence and did not concur.

WHEREFORE, Defendants respectfully request that the Court enter an order granting this motion; dismissing the action with prejudice; awarding Defendants their costs and fees, including attorneys' fees; and awarding such other and further relief the Court deems just and appropriate.

---

[1] Defendant Mikiko Senga has not been served, and is not a party to this motion. For ease of reference, the remaining Defendants are referred to as "Defendants."

2

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC


By:  s/Thomas W. Cranmer
      Thomas W. Cranmer (P25252)
      David O'Brien (P65532)
      Paul D. Hudson (P69844)
      Miller Canfield Paddock & Stone, PLC
      840 West Long Lake Road, Suite 200
      Troy, Michigan 48098
      Telephone: (248) 879-2000
      cranmer@millercanfield.com
      *Counsel for Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spencer, Susan Pritzel, E. Royster Harper, Malinda Matney, Anthony Walesby, and Laura Blake Jones*

Date: May 20, 2014

22227664.1\088888-03979

3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DREW STERRETT,

Plaintiff;

v.

HEATHER COWAN, JAY WILGUS,
STACY VANDER VELDE, THEODORE
SPENCER, SUSAN PRITZEL, MIKIKO
SENGA, E. ROYSTER HARPER,
MALINDA MATNEY, ANTHONY
WALESBY, and LAURA BLAKE JONES,
employees of the University of Michigan, in
their personal and official capacities,

Defendants.

Case No: 2:14-cv-11619

Hon. Denise Page Hood

| DEBORAH GORDON LAW | MILLER, CANFIELD, PADDOCK AND STONE, PLC |
|---|---|
| Gordon, Laughbaum & Prescott | Thomas W. Cranmer (P25252) |
| Deborah L. Gordon (P27058) | David O'Brien (P65532) |
| Carol A. Laughbaum (P41711) | Paul D. Hudson (P69844) |
| 33 Bloomfield Hills Pkwy, Suite 220 | 840 West Long Lake Road, Suite 200 |
| Bloomfield Hills, MI 48304 | Troy, Michigan 48098 |
| dgordon@deborahgordonlaw.com | Telephone: (248) 879-2000 |
| claughbaum@deborahgordonlaw.com | cranmer@millercanfield.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spencer, Susan Pritzel, E. Royster Harper, Malinda Matney, Anthony Walesby, and Laura Blake Jones* |

## BRIEF SUPPORTING DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

ISSUES PRESENTED ....................................................................... III

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................ IV

INTRODUCTION ............................................................................. 1

ALLEGATIONS IN THE COMPLAINT ................................................... 2

    A.    A Student Reports to the University that Drew Sterrett Sexually Assaulted Her, and the University Initiates a Thorough Process of Investigation and Analysis During Which Sterrett is Provided Notice of the Charges Against Him and an Opportunity to Be Heard ................................................ 2

    B.    The Claims and Parties ................................................... 9

ARGUMENT ................................................................................. 10

    I.    PLAINTIFF FAILS TO PLEAD A CLAIM FOR VIOLATION OF THE DUE PROCESS CLAUSE ................................................ 10

        A.    The Due Process Clause Requires Only Basic Notice and the Opportunity to Be Heard .................................... 10

        B.    Notice:  Sterrett Received Notice of the Sexual Misconduct Allegations Sufficient to Provide Him the Opportunity to Defend Against the Allegations ...................... 12

        C.    Opportunity to Be Heard:  Sterrett Received Abundant Process Over the Course of the University's Disciplinary Proceedings, and Availed Himself, Through Experienced Retained Counsel, of the Opportunity to Vigorously Contest the Charges Against Him ........................................... 16

    II.    PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE FIRST AMENDMENT ....................................................... 21

    III.    PLAINTIFF'S DAMAGES CLAIMS FAIL BECAUSE DEFENDANTS ARE PROTECTED BY QUALIFIED IMMUNITY .................................................................... 23

CONCLUSION AND RELIEF REQUESTED ........................................... 25

## ISSUES PRESENTED

1. The University of Michigan placed Plaintiff Drew Sterrett on disciplinary probation after another student accused him of sexual misconduct.  The University conducted a thorough investigation and appeal process, during which Plaintiff, represented by counsel, received notice of the charges and vigorously defended against them.

   Does Plaintiff fail to state a claim under 42 U.S.C. § 1983 for alleged violation of his due-process rights?

2. Does Plaintiff fail to state a claim under 42 U.S.C. § 1983 for alleged violation of his First Amendment rights?

3. Are Defendants immune from Plaintiff's claims for money damages under the doctrine of qualified immunity?

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Flaim v. Medical College of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005)

*Jaksa v. Regents of University of Michigan*, 597 F. Supp. 1245 (E.D. Mich. 1984)

    *affirmed*, 787 F.2d 1986 (6th Cir. 1986)

Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(1)

**INTRODUCTION**

Plaintiff Drew Sterrett was placed on disciplinary probation at the University of Michigan after a thorough investigation of allegations by another student that he committed sexual misconduct. The University afforded Sterrett abundant process before imposing that discipline.

Over the course of nearly a year of investigation and proceedings, the University interviewed six witnesses, including Sterrett and the complainant; provided Sterrett summaries of the witness interviews; and permitted Sterrett to challenge the witness statements in writing. The University issued a draft investigation report and solicited comment from Sterrett; issued a thorough final investigation report detailing the findings and conclusions; and issued an addendum to the investigation report based on Sterrett's written objections through experienced retained counsel. The University then offered Sterrett a settlement agreement; permitted Sterrett to appeal with the aid of counsel; and on appeal *reduced* Sterrett's sanctions from suspension to a period of disciplinary probation whereby he could resume his studies and graduate from the University of Michigan if he met certain conditions.

Sterrett refused to comply, and decided to file this lawsuit instead. He claims the University violated his federal due-process and First Amendment rights, and seeks damages and injunctive relief from nine University employees and a

1

student-body representative who all reviewed his case and all agreed that the evidence showed he sexually penetrated a fellow student without her consent.

Sterrett fails to state a claim upon which relief can be granted. Sterrett does not like the *result* of the proceedings, and he challenges at length in his complaint the character and quantum of evidence supporting his discipline. But the Due Process Clause is not a vehicle for second-guessing the considered disciplinary actions of a university. The only issue in a due-process challenge is whether the university's *procedures* met the "bare-minimum requirements of due process," which simply require notice and an opportunity to be heard. *Flaim v. Medical College of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005) (affirming dismissal under Rule 12(b)(6)). The University of Michigan's procedures, by Sterrett's own allegations, far exceeded those basic due-process requirements. None of the Defendants violated Sterrett's due-process or First Amendment rights, and Defendants, as state officials, may not be sued for damages under the doctrine of qualified immunity. The Court should dismiss the action.

## ALLEGATIONS IN THE COMPLAINT

**A.    A Student Reports to the University that Drew Sterrett Sexually Assaulted Her, and the University Initiates a Thorough Process of Investigation and Analysis During Which Sterrett is Provided Notice of the Charges Against Him and an Opportunity to Be Heard**

On August 2, 2012, an undergraduate student reported to the University that Drew Sterrett sexually assaulted her in a campus residence hall. (Compl. ¶ 34.)

2

The University began an investigation and, over the course of the next year, afforded Sterrett notice of the charges against him and abundant opportunities to defend against them. (*Id.* ¶ 25.)

**The University interviews six witnesses.** The University's lead investigator, Defendant Heather Cowan, then the Program Manager of the Office of Student Conflict Resolution (OSCR), first interviewed the complainant. (*Id.* ¶ 34.) The complainant told Ms. Cowan that, on March 16, 2012, Sterrett engaged in sexual intercourse with her in Sterrett's dorm room without her consent. (*Id.* ¶¶ 34, 81.)

Ms. Cowan then interviewed Sterrett, on August 6, and learned his version of the events. (Compl. ¶ 25.) Another University official participated in the interview. (*Id.*) "Plaintiff learned that Complainant had made a verbal complaint to Cowan and that Cowan was also assigned to 'investigate.'" (*Id.* ¶ 31.) Plaintiff "gleaned" from the questions that the complaint was an allegation of sexual misconduct by complainant—"a fellow MRC member and friend" with whom he'd had sex the past semester. (*Id.*) After hearing from the accuser and the accused, the investigator then interviewed four additional witnesses, including Sterrett's roommate and other friends and acquaintances. (Compl. ¶ 57.)

**The University provides summaries of the witness statements.** The University then afforded Sterrett the opportunity to review summaries of the witnesses' interviews and learn the basis of the evidence against him. On

3

September 27, 2012, Sterrett "received Heather Cowan's typed summary of her verbal interview with him." (Compl. ¶ 56)   Sterrett also received summaries of Cowan's interview of the complainant (*id.* ¶ 40), and of the four additional witnesses Cowan interviewed. (*Id.* ¶ 58.) Sterrett received on November 5, 2012 a "Summary of Witness Testimony and Other Evidence." (*Id.* ¶ 80.)

*Sterrett challenges the witnesses' statements*.   Sterrett received all of these summaries before the University issued an investigation report, and he availed himself of the opportunity to challenge the witnesses' statements.   He did so in writing, on November 9, 2012, offering a "paragraph by paragraph response/rebuttal to each alleged statement" made by the complainant and "providing five single-spaced pages of additional information, and listing concerns about key omitted facts and information[.]" (Compl. ¶¶ 81, 82.) Sterrett requested that the summary of witness testimony "be revised and amended" based on his submission. (*Id.* ¶ 83.) The investigator considered his request, and responded in writing, "all of your comments on the witness summaries will be considered as we finalize our review of this matter[.]" (*Id.* ¶ 85.)

*The University issues a draft investigation report, and elicits comment from Sterrett*.   Ms. Cowan issued a draft investigation report on November 5, 2012, summarizing the results of the investigation. (Compl. ¶ 86.)   "Complainant and Plaintiff were provided with a copy of the Draft Report to review and

4

comment on." (*Id.* ¶ 87.) Sterrett reviewed the draft report and again availed himself of the opportunity to challenge the allegations—he "promptly responded on November 25, 2012, with an email" setting forth what he believed were the deficiencies in the draft report. (*Id.* ¶ 88.)

**The University issues an investigation report.** After receiving Sterrett's comments on the draft report, OSCR issued its Sexual Misconduct Investigation Report on November 30, 2012. (Compl. ¶ 93.) The report detailed the background of the dispute, the complainant's report of sexual misconduct, Sterrett's defenses, and the witness testimony. (*Id.*) The report noted that, in addition to the complainant's testimony, another witness had told the investigator that Sterrett "had NOT specifically denied . . . that Complainant had said 'no,'" and had admitted engaging in nonconsensual sex with the complainant. (*Id.* ¶¶ 100-101.) Applying a preponderance of the evidence standard to all of the evidence, the report concluded "that Respondent engaged in sexual intercourse with the Complainant without her consent[.]" (*Id.* at ¶ 93.)

The investigative report did not itself take disciplinary action against Sterrett, nor did the investigator recommend any particular discipline. Instead, the report was referred to OSCR to evaluate whether sanctions were appropriate. (*Id.*) Thus, when the investigation report was issued on November 30, 2012, no

disciplinary action had been taken against Sterrett, and Sterrett had additional opportunities to challenge the report and argue against discipline. (*Id.*)

**Sterrett meets with an OSCR representative to discuss the report.** Sterrett availed himself of additional opportunities to be heard. Sterrett requested a meeting with OSCR to discuss the investigation report, and on December 6, 2012, Sterrett met with OSCR Associate Director Stacy Vander Velde and raised his objections to the report. (Compl. ¶ 117.)

**Sterrett, through retained private counsel, issues written objections to the investigation report.** Sterrett retained an experienced private lawyer to represent him during the disciplinary proceedings. (Compl. ¶ 118.) On December 11, 2012, Sterrett's lawyer "sent a seven page letter to Defendants," setting forth Sterrett's objections to the investigation report, including a challenge to an alleged statement made by Sterrett's roommate. (*Id.*)

**The University responds to the objections and re-interviews a witness.** The University reviewed Sterrett's objections, and "responded on December 18, 2012 that it would be referring the issues raised by Plaintiff" back to Ms. Cowan for further analysis. (Compl. ¶ 119.) Ms. Cowan then "re-interviewed Z.L. [Sterrett's roommate] on December 18, 2012." (*Id.* ¶ 120.)

***The University issues an addendum to the investigation report.*** Based on the re-interview, Ms. Cowan issued an "Addendum to Sexual Misconduct Investigation Report Issued November 20, 2012." (Compl. ¶ 121.)

***The University proposes a "Resolution Agreement" with Sterrett.*** On January 10, 2013, the University offered Sterrett a "Resolution Agreement" whereby Sterrett would be suspended from the University until 2016 and then placed on disciplinary probation for a year. (Compl. ¶ 134.) Sterrett rejected the proposed resolution, and decided to continue the process of challenging the investigation and any discipline. (*Id.* ¶ 136.)

***Sterrett, through retained counsel, submits additional materials and affidavits.*** On January 17, 2013, "Plaintiff's counsel sent another letter to OSCR," setting forth additional objections to the investigation and the investigation report. (Compl. ¶ 130.) Sterrett also submitted affidavits from himself, his roommate, and two other witnesses. (*Id.* ¶ 131.)

***The Dean of Students, OSCR, and the Office of the Vice President for Student Affairs all review the file and unanimously recommend sanctions.*** After a resolution officer from the University's Office of the Vice President for Student Affairs met with Sterrett and recommended sanctions, the University's Dean of Students and two OSCR officers reviewed the file. (Compl. ¶ 137-38.) On February 1, 2013, the University unanimously recommended suspending Sterrett

until July 1, 2016—after the complainant's scheduled graduation date. (*Id.* ¶ 137.) To be eligible for readmission, Sterrett would have to complete sexual-consent training and complete a reflection essay discussing what he learned from the incident and his suspension period, among other conditions. (*Id.*)

***Sterrett, through retained counsel, files an extensive appeal.*** The University informed Sterrett that he would be permitted to appeal to a University Appeals Board, and Sterrett did so. (Compl. ¶ 139.) Sterrett, through retained counsel, "presented a detailed statement" of his arguments, and "submitted four Affidavits from witnesses." (*Id.* ¶¶ 140-41.) He also submitted "a one and a half page document titled 'Request to be Heard and make an Oral Presentation to the Appeals Board.'" (*Id.* ¶ 142.)

***The Appeals Board considers Sterrett's appeal and recommends reducing Sterrett's sanctions.*** An appeal board was convened to consider Sterrett's appeal. (Compl. ¶ 139.) The board was composed of a presidential appointee, a faculty-senate appointee, and a student representative. (*Id.* ¶¶ 8, 9, 10.) The board met on two separate days to weigh the appeal, and on July 22, 2013 issued a report to the Vice President for Student Affairs. (*Id.* ¶ 139.) The Board unanimously agreed that a preponderance of the evidence supported the conclusion that Sterrett had engaged in sexual misconduct. Based on Sterrett's arguments, however, the Board recommended eliminating the suspension sanction and imposing instead a period

of disciplinary probation, whereby Sterrett would be permitted to continue his studies and graduate from the University, with restrictions on Sterrett's contact with the complainant and other conditions. (*Id.* ¶ 147.)

*The Vice President for Student Affairs reviewed the Appeals Board report and reduced Sterrett's sanctions.* On July 28, 2013, the Vice President for Student Affairs, E. Royster Harper, reviewed the file and the Appeals Board report, accepted the recommendation, and imposed the "lessened" sanctions. (Compl. ¶¶ 147-48.)

Sterrett refused to comply with the lessened sanctions, and decided to file this lawsuit instead. (*Id.* ¶ 147.)

**B.     The Claims and Parties**

Sterrett is suing nine University employees and a former University student (who has not been served). In Count I of his complaint, Sterrett brings a claim under 42 U.S.C. § 1983 for alleged violation of his Fourteenth Amendment due-process rights. He alleges the claim against all Defendants, "for money damages in their personal capacities and for injunctive relief in their official capacities." In Count II, Sterrett brings a § 1983 claim for alleged violation of his First Amendment free-speech rights. He brings the claim against "Defendants Cowan

Vander Velde and Wilgus for money damages in their personal capacities and for injunctive relief in their official capacities." Defendants move to dismiss.[1]

## ARGUMENT

## I. PLAINTIFF FAILS TO PLEAD A CLAIM FOR VIOLATION OF THE DUE PROCESS CLAUSE

### A. The Due Process Clause Requires Only Basic Notice and the Opportunity to Be Heard

A court's review of a university disciplinary action is "circumscribed." *Flaim v. Medical College of Ohio*, 418 F.3d 629, 638 (6th Cir. 2005). Courts considering procedural due-process challenges do not sit as super-appellate boards to review whether they believe a university's ultimate decision to discipline a student was correct or incorrect. Rather, a court's review is limited to whether the university's *process* in reaching its decision met the baseline protections of the Due Process Clause. *Id.* ("Our review of this matter, however, is circumscribed. We are limited to determining whether the procedures used by [the college] were constitutional."); *see also Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 13-14 (D. Me. 2005) ("This Court's review is substantially circumscribed; the law does not allow this Court to retry the University's disciplinary proceeding . . . . This

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "Although for the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true, [courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

Court draws no opinion, therefore, about whether a sexual assault occurred, whether the acts were consensual, who among the Plaintiffs and the Complainant is credible, and who is not.").

Even that process-only review is circumscribed. The standard is not whether additional procedures were available; the standard is whether the procedures employed met the "bare-minimum requirements of due process." *Flaim*, 418 F.3d at 632. And the Due Process Clause in a student-disciplinary proceeding does not require "a full-scale adversarial proceeding such as those afforded criminal defendants." *Jaksa v. Regents of Univ. of Michigan*, 597 F. Supp. 1245 (E.D. Mich. 1984), *affirmed*, 787 F.2d 590 (6th Cir. 1986). "A university is not a court of law, and it is neither practical nor desirable it be one." *Flaim*, 418 F.3d at 635 n.1 (quoting *Gomes*, 365 F. Supp. 2d at 16). "Schools, of course, have an unquestionably powerful interest in maintaining the safety of their campuses and preserving their ability to pursue their educational mission." *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000). As the United States Supreme Court noted, "our schools are vast and complex. Some modicum of discipline and order is essential if the educational function is to be performed . . . . Suspension [or other discipline] is considered not only to be a necessary tool to maintain order but a valuable educational device." *Goss v. Lopez*, 419 U.S. 565, 580 (1975).

There are "two basic due process requirements:  (1) notice, and (2) and opportunity to be heard." *Flaim*, 418 F.3d at 634; *see Goss*, 419 U.S. at 579 (a student facing discipline must be given "some kind of notice and afforded some kind of hearing").  "To determine the sort of notice and hearing to which a student is entitled, the Court balance[s] the student's interest in avoiding unfair or mistaken exclusion from the educational process against the school's interest in maintaining discipline." *Jaksa*, 597 F. Supp. at 1248.  If a student received notice and an opportunity to be heard, he fails to state a claim for a violation of the Due Process Clause. *Flaim*, 418 F.3d at 632 (affirming dismissal for failure to state a claim).

### B.     Notice:   Sterrett Received Notice of the Sexual Misconduct Allegations Sufficient to Provide Him the Opportunity to Defend Against the Allegations

Sterrett received notice of the allegations against him.  "Constitutionally adequate notice is that which provides a person with sufficient information to make the eventual hearing meaningful." *Jaber v. Wayne State Univ. Bd. of Governors*, 788 F. Supp. 2d 572, 576 (E.D. Mich. 2011) (quoting *Picozzi v. Sandalow*, 623 F. Supp. 1571, 1580 (E.D. Mich. 1986)).  The notice requirement, in other words, ensures that the accused is apprised of the charges so that he has a meaningful opportunity to "respond, explain, and defend" against them. *Flaim*, 418 F.3d at 635 (quoting *Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 13 (1st Cir. 1988)).

Sterrett received notice of the allegations sufficient to respond, explain, and defend against them.  Indeed, by Sterrett's own allegations, he knew from the very outset that the allegations against him were allegations of sexual misconduct; he knew the specific person making the allegations; and he knew in fact that he had had sex with this person in his dorm room.  Sterrett alleges, for example, that in his interview on August 6, 2012 with the University investigator, he "learned that Complainant had made a verbal complaint to Cowan and that Cowan was also assigned to 'investigate,'" and he understood that the allegations involved "sexual misconduct." (Compl. ¶ 31.)  He knew that the allegations were "made by a fellow MRC member and friend, C.B. (Complainant) with whom Plaintiff had had consensual sex on one occasion, in Plaintiff's dorm room[.]" (*Id.*)  Sterrett knew all of this on August 6, 2012, more than three months before Cowan produced her initial draft investigation report to him on November 20, 2012, and long before the University completed its review and imposed discipline on July 29, 2013. (*Id.* ¶¶ 31, 86.)

Cowan also provided Sterrett with a "Summary of Witness Testimony and Other Evidence," on November 5, 2012—two weeks before the draft investigation report—which provided Sterrett further notice of the allegations against him. (Compl. ¶ 80.)  Sterrett reviewed this document and responded to it in writing. (*Id.* ¶ 81.)  Indeed, he emphasizes that his written response provided "five single-

13

spaced pages of additional information," provided a "paragraph by paragraph response/rebuttal to each alleged statement," and listed "concerns about key omitted facts and information." (*Id.*) In that response, Sterrett *admitted* that he had notice of the specific charges against him, and that he contested the charges: "I understand that the complainant now says that the sexual relationship was not consensual, that she said 'no'. I cannot state it more clearly that this is untrue." (*Id.* ¶ 81(e).)

In short, Sterrett was under no misapprehension about the nature of the allegations against him, who had made the allegations, or the witness testimony that the University would consider in weighing sanctions. He certainly had "sufficient information to make the eventual hearing meaningful," *Jaber*, 788 F. Supp. 2d at 576, and "to respond, explain, and defend" against the charges. *Flaim*, 418 F.3d at 635.

Sterrett alleges conclusorily that he "was never given notice of the charges against him." (Compl. ¶ 11.) But that conclusory allegation is not sufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). And his own allegations run counter to his conclusion: He admits that he *did* know the nature of the charges against him, and that he knew

14

specifically that they were allegations of "sexual misconduct" by his "friend" C.B., with whom he'd had sex in his dorm room. (Compl. ¶ 31.)

Sterrett asserts that "[t]here is no written documentation of the content of the charge or complaint," and complains that, "[i]n fact, Complainant has never filed a written complaint against Plaintiff with Defendants." (Compl. ¶¶ 34, 37.) But "the Sixth Circuit has never held that an accuser must formalize, in writing, all contemplated sanctions an accused faces before notice can be said to pass constitutional muster." *Jaber*, 788 F. Supp. 2d at 576. The standard is simply whether Sterrett had "sufficient information to make the eventual hearing meaningful," *id.*, a standard met here.

Sterrett also asserts that he did not have sufficient notice of the "specific charges or complaint against him" at the time of his interview with Ms. Cowan. (Compl. ¶ 30.) Again, his other allegations contradict that conclusory assertion—he admits he knew *during that interview* that the complaint against him was made by C.B. and concerned sexual misconduct. (*Id.* ¶ 31.) Moreover, Sterrett admits that before the University imposed discipline against him—before the University even issued an investigation report—he had notice of the charges against him. (*See, e.g.*, Compl. ¶ 81.) The purpose of the notice requirement is to inform the accused of the nature of the charges against him so he has the opportunity thereafter to contest them. *Jaber*, 788 F. Supp. 2d at 576. Sterrett, by his own

allegations, knew perfectly well the nature of the charges against him, and vigorously contested the charges for nearly a year throughout the University disciplinary process. Sterrett received constitutionally sufficient notice. *See, e.g.*, *Picozzi*, 623 F. Supp. at 1580 (the dean gave notice in a letter of "precisely the question that the 1985 administrative hearing finally adjudicated . . . Even if [the Dean] had not made this perfectly clear by letter, I cannot believe anyone in Picozzi's position could have been unaware of the basis for the Dean's action.")

### C. Opportunity to Be Heard: Sterrett Received Abundant Process Over the Course of the University's Disciplinary Proceedings, and Availed Himself, Through Experienced Retained Counsel, of the Opportunity to Vigorously Contest the Charges Against Him

Sterrett also had an "opportunity to be heard." *Flaim*, 418 F.3d at 634. Sterrett not only received that opportunity, he availed himself of it, and vigorously contested the charges—with the aid of experienced retained counsel—through multiple layers of University review. Sterrett received *abundant* process. He certainly received process sufficient to meet the "bare-minimum requirements of due process." *Id.*

A student receives an "opportunity to be heard" when he or she is provided an "opportunity to 'respond, explain, and defend.'" *Id.* at 635 (quoting *Gorman*, 837 F.2d at 13). A "hearing" does not have to be live and in-person—a hearing or hearings may be "formal, informal, live or not," *id.*, and "[t]he specific procedures required in any given circumstances depend on the nature of the

16

interests affected, the risk of an erroneous deprivation of that interest through the procedures used, and the burdens on the state of additional or substitute procedures." *Jaksa*, 597 F. Supp. at 1254. "Courts have generally been unanimous . . . in concluding that hearings need not be open to the public, that neither rules of evidence nor rules of civil or criminal procedure need be applied, and witnesses need not be placed under oath." *Flaim*, 418 F.3d at 635 (internal citations omitted). The Supreme Court stated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), that "[a]ll that is necessary is that the procedures be tailored in light of the decision to be made, to the capacities and circumstances of those who are to be heard to insure that they are given a meaningful opportunity to present their case."

Sterrett received a meaningful opportunity to present his case and to respond, explain, and defend against the charges against him. The process the University afforded Sterrett over the course of nearly a year of investigation, analysis, reporting, and appeals, was extensive, and it was fair. It met and exceeded the requirements of the Due Process Clause.

Indeed, as set forth in detail above (even a pared-down summary of the process based only on the allegations of the complaint spans nearly 7 pages), Sterrett received all of the following process. The University interviewed six witnesses, including Sterrett and the complainant (Compl. ¶¶ 25, 34, 57); provided Sterrett summaries of the witness interviews (*id.* ¶¶ 40, 56, 58, 80); and permitted

17

Sterrett to challenge the witness statements in writing (*id.* ¶¶ 81- 82). The University issued a draft investigation report and solicited comment from Sterrett (*id.* ¶¶ 86-88); issued a thorough final investigation report detailing the findings and conclusions (*id.* ¶ 93); met with Sterrett to discuss the report (*id.* ¶ 117); and issued an addendum to the investigation report based on Sterrett's written objections through experienced retained counsel (*id.* ¶¶ 118-21). The University then offered Sterrett a settlement agreement (*id.* ¶ 134); had four other university officials review the file (*id.* ¶¶ 137-38); permitted Sterrett to appeal with the aid of counsel (*id.* ¶¶ 139-42); and on appeal *reduced* Sterrett's sanctions from suspension to a period of disciplinary probation whereby he could resume his studies and graduate from the University of Michigan (*id.* ¶¶ 147-48).

That's not lack of due process. It's abundant process. Sterrett vigorously defended against the charges through multiple layers of University review, and was afforded ample opportunity to "respond, explain, and defend" against the charges. *Flaim*, 418 F.3d at 635. Sterrett received an "opportunity to be heard," and the University's procedures certainly met and exceeded the "bare-minimum requirements of due process." *Id.*; *see, e.g., Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 570 (6th Cir. 2011) ("Allowing students to state claims for procedural due process violations against officials participating in the type of process the Constitution does not require would further formalize the suspension

process and increase its adversarial nature, two undesirable outcomes"); *Simmons v. Wayne Cnty. Cmty. Coll. Dist.*, 2014 WL 764632 (E.D. Mich. Feb. 25, 2014) ("By plaintiff's own admission, the decision to terminate her was the culmination of several meetings and appeals not themselves required as a matter of due process. This process shows defendants' decision to have been careful and deliberate.").

The Sixth Circuit's decision in *Flaim* is instructive. There, the Court affirmed dismissal pursuant to Rule 12(b)(6) of a former medical student's due-process challenge to his expulsion from the school. The student had been convicted of a drug crime, and the University thereafter suspended and then expelled him from school. The Sixth Circuit noted that the medical school's procedures were "perhaps less-than-desirable for an institution of higher learning." 418 F.3d at 632. The school held a hearing and told Flaim that it would prepare a written report, but the school never prepared the report. *Id.* at 633. Instead, the school simply sent Flaim a one-page letter informing him that he had been expelled. *Id.* All Flaim was told was "that the college had a 'zero-tolerance policy' regarding drugs" and that "a more specific reason for the decision would not be provided." *Id.* The school further told Flaim that "an appeal was not available." *Id.* Flaim requested a hearing, but the school told him that "because Flaim was no longer a student" (he'd been expelled), "he had no existing rights" and could not appeal the decision further. *Id.*

Even those barebones procedures met the constitutional requirements for due process. That was true even where the discipline imposed—total expulsion—was the most severe sanction the school could impose (and more severe than the probation sanctions Sterrett received here). *Id.* at 632. The Sixth Circuit noted that "the procedures used here were far from ideal and certainly could have been better." *Id.* at 637. "The Due Process Clause, however, sets only the floor or lowest level of procedures acceptable." *Id.* at 636. Flaim received basic notice and an opportunity to be heard, so he received due process. *Id.* The Court affirmed dismissal of his § 1983 claim on the pleadings under Rule 12(b)(6). *Id.*

This Court's decision in *Jaksa* is likewise instructive. There, the University of Michigan suspended a student for cheating on a final exam. 597 F. Supp. at 1247. After a hearing, a student-faculty panel recommended a two-semester suspension. *Id.* The student appealed to an appeal board, which "reduced Jaksa's penalty to a one-semester suspension." *Id.* This Court granted summary judgment to the University on the plaintiff's due-process challenge to his suspension. The Court (Judge Feikens) "conclud[ed] that plaintiff received more procedural protection than the due process clause requires. Plaintiff's argument seems to rest largely on an unstated view that a university may not discipline its students without providing a full-scale adversarial proceeding. Since this view of the University's constitutional obligations neither comports with the decisional law, nor is a

20

reasonable accommodation of plaintiff's and the University's interest, I reject this expansive reading of the due process clause." *Id.* at 1249. The Sixth Circuit unanimously affirmed, "for the reasons stated by Chief Judge Feikens in his memorandum opinion." 787 F.2d 590 (6th Cir. 1986).

Sterrett here likewise "received more procedural protection than the due process clause requires." *Id.* The Court should dismiss Sterrett's due-process claim for failure to state a claim upon which relief can be granted. *See, e.g., Flaim*, 418 F.3d at 632 (affirming dismissal for failure to state a claim); *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 597 (8th Cir. 2007) (reversing denial of motion to dismiss on procedural-due-process claim by student against university).

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE FIRST AMENDMENT

Sterrett alleges in Count II that Defendants Cowan, Vander Velde, and Wilgus violated his First Amendment free-speech rights by telling him not to talk to other witnesses about the case. (Compl. ¶ 198.) The claim is meritless.

It is not a constitutional violation to instruct witnesses not to talk to each other about a case. This is a common practice in criminal and other investigations, and it has the salutary effects of maintaining the integrity of witness testimony and avoiding witness intimidation or harassment. *Cf. Jaksa*, 597 F. Supp. at 1252 (recognizing "the need for anonymity of student accusers, who might otherwise be the victim of reprisals from fellow students"). Moreover, the Supreme Court has

cautioned that First Amendment claims in the academic context must be analyzed "in light of the special characteristics of the school environment." *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 506 (1969). "[C]onduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech." *Id.* Thus, the Sixth Circuit has recognized that student speech rights at times must yield to "'the rights of other students to be secure and to be let alone,' taking into account the authority of school officials to maintain the discipline and learning environment necessary to accomplish the school's educational mission." *Barr v. Lafon*, 538 F.3d 554, 562 (6th Cir. 2008) (quoting *Tinker*, 393 U.S. at 508).

That is especially true in the context of an on-campus sexual-misconduct investigation. A fellow student accused Sterrett of sexually penetrating her without consent in a campus residence hall. That is a serious charge, and one the University took seriously. The University's interest in maintaining the safety and security of its students during the investigation of that charge was at its apex. *See Seal*, 229 F.3d at 574 ("Schools, of course, have an unquestionably powerful interest in maintaining the safety of their campuses and preserving their ability to pursue their educational mission"). Given that powerful interest, taking the simple

step of allegedly instructing Sterrett not to approach other witnesses in the case—including the complainant who said he sexually assaulted her—was an eminently sensible one, and did not abridge Sterrett's First Amendment rights.

Moreover, Sterrett *did* in fact contact witnesses in the case, and in fact "collect[ed] sworn statements" from them, which he submitted to the University for consideration. (Compl. ¶ 43.) Sterrett alleges conclusorily that the sworn statements he collected "were essentially ignored by Defendants," but his factual allegations again contradict that conclusion. He admits, for example, that the University received and reviewed these affidavits before imposing discipline (Compl. ¶¶ 140-41), and far from ignoring them used them as the basis for *reducing his sanctions* from suspension to probation. (Compl. ¶¶ 147-48.)

In short, Sterrett simply does not plead a plausible claim for denial of his First Amendment rights. The Court should dismiss the claim.

## III.    PLAINTIFF'S DAMAGES CLAIMS FAIL BECAUSE DEFENDANTS ARE PROTECTED BY QUALIFIED IMMUNITY

Plaintiff purports to seek from Defendants "money damages in their personal capacities." (Compl. Counts I, II.) Defendants have qualified immunity from such claims, and the claims therefore must be dismissed.

Qualified immunity "provide[s] state and federal officials, acting reasonably, with the authority to make difficult decisions and to exercise discretion without fear of being held to answer in damages." *Picozzi*, 623 F. Supp. at 158. "A

government official who performs discretionary functions is entitled to qualified immunity from civil suits for damages arising out of the performance of his official duties unless his alleged conduct violated clearly established constitutional rights of which a reasonable person would have known." *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995).   The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Defendants did not violate Sterrett's clearly established constitutional rights.   "The threshold inquiry in a qualified immunity analysis is whether a constitutional violation occurred at all.   In other words, we first determine whether [the plaintiff] has stated a valid claim under section 1983." *Purisch v. Tenn. Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996).   As shown above, there was no due-process violation nor First Amendment violation, and thus Sterrett failed to state a valid claim under section 1983.   Thus, his claims against Defendants fail on the pleadings as a matter of law under the doctrine of qualified immunity. *See id.*

Moreover, any right to additional procedures Sterrett claims were due was not "clearly established."   As the Western District has noted, the "contours" of the right to any particular procedures in a university disciplinary proceeding are not clearly established. *Lee v. Univ. of Michigan-Dearborn*, 2007 WL 2827828 (W.D. Mich. Sept. 27, 2007).   Courts have therefore held that school administrators are

24

protected by qualified immunity because, whatever the contours of those rights, the case law does not support an "expectation of a certain type of due process itself." *Id.* Courts have likewise held that "it is not clear that a university student has a property interest in continuing his studies" sufficient to overcome a qualified-immunity defense. *Hill v. Bd. of Trustees of Michigan State Univ.*, 182 F. Supp. 2d 621, 627-28 (W.D. Mich. 2001).[2]

In short, as a matter of law based on Sterrett's allegations in the complaint, Defendants did not violate Sterrett's clearly established constitutional rights. Defendants are protected by qualified immunity, and Sterrett's damages claims must be dismissed under Rule 12(b)(1).

## CONCLUSION AND RELIEF REQUESTED

Plaintiff fails to state a claim upon which relief can be granted, and Defendants are protected from Plaintiff's damages claims by the doctrine of qualified immunity. Defendants respectfully request that the Court dismiss the action with prejudice.

---

[2] Defendants likewise did not violate a clearly established First Amendment right by allegedly "prohibiting Plaintiff from speaking with fellow students and witnesses." (Compl. ¶ 201.)

25

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC


By:   s/Thomas W. Cranmer
      Thomas W. Cranmer (P25252)
      David O'Brien (P65532)
      Paul D. Hudson (P69844)
      Miller Canfield Paddock & Stone, PLC
      840 West Long Lake Road, Suite 200
      Troy, Michigan 48098
      Telephone: (248) 879-2000
      cranmer@millercanfield.com
      *Counsel for Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spencer, Susan Pritzel, E. Royster Harper, Malinda Matney, Anthony Walesby, and Laura Blake Jones*

Date: May 20, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will serve all registered parties.

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:   s/Thomas W. Cranmer
       Thomas W. Cranmer (P25252)
       David O'Brien (P65532)
       Paul D. Hudson (P69844)
       Miller Canfield Paddock & Stone, PLC
       840 West Long Lake Road, Suite 200
       Troy, Michigan 48098
       Telephone: (248) 879-2000
       cranmer@millercanfield.com
       *Counsel for Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spencer, Susan Pritzel, E. Royster Harper, Malinda Matney, Anthony Walesby, and Laura Blake Jones*

Date: May 20, 2014

22227616.1\088888-03979