# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DREW STERRETT,

Plaintiff;

v.

HEATHER COWAN, JAY WILGUS,
STACY VANDER VELDE, THEODORE
SPENCER, SUSAN PRITZEL, MIKIKO
SENGA, E. ROYSTER HARPER,
MALINDA MATNEY, ANTHONY
WALESBY, and LAURA BLAKE JONES,
employees of the University of Michigan, in
their personal and official capacities,

Defendants.

Case No: 2:14-cv-11619

Hon. Denise Page Hood

| | |
|---|---|
| DEBORAH GORDON LAW | MILLER, CANFIELD, PADDOCK AND STONE, PLC |
| Gordon, Laughbaum & Prescott | |
| Deborah L. Gordon (P27058) | Thomas W. Cranmer (P25252) |
| Carol A. Laughbaum (P41711) | David O'Brien (P65532) |
| 33 Bloomfield Hills Pkwy, Suite 220 | Paul D. Hudson (P69844) |
| Bloomfield Hills, MI 48304 | 840 West Long Lake Road, Suite 200 |
| dgordon@deborahgordonlaw.com | Troy, Michigan 48098 |
| claughbaum@deborahgordonlaw.com | Telephone: (248) 879-2000 |
| *Attorneys for Plaintiff* | cranmer@millercanfield.com |
| | *Attorneys for Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spencer, Susan Pritzel, E. Royster Harper, Malinda Matney, Anthony Walesby, and Laura Blake Jones* |

## REPLY SUPPORTING DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

1.   THE ADDITIONAL PROCEDURES STERRETT DEMANDS ARE
     NOT REQUIRED BY DUE PROCESS AND HAVE BEEN
     REJECTED BY THE U.S. DEPARTMENT OF EDUCATION...................1

2.   STERRETT RECEIVED NOTICE ..............................................................3

3.   STERRETT RECEIVED AN OPPORTUNITY TO BE HEARD..............10

4.   STERRETT'S FIRST AMENDMENT CLAIM FAILS.............................17

5.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY...........19

6.   ALL PARTIES AGREE THAT NO DISCOVERY IS NECESSARY
     TO RESOLVE THIS MOTION ................................................................20

1.     **The Additional Procedures Sterrett Demands Are Not Required By Due Process and Have Been Rejected by the U.S. Department of Education**

Sterrett asks the Court to impose requirements on universities that are not required by the Due Process Clause, that directly contradict the requirements imposed on universities by the United States Department of Education's Office for Civil Rights ("OCR"), and that could result in universities losing federal funding.

Sterrett complains, for example, that the University initiated its own investigation even though the victim did not report the sexual misconduct to law enforcement.   (Compl. ¶ 33.)   But OCR expressly *requires* a university to investigate complaints of sexual misconduct even where law enforcement is not involved.  (*See* U.S. Dep't of Educ., *Dear Colleague Letter* (Apr. 4, 2011) at 10-11.)[1]  Sterrett complains that he was disciplined based on a "preponderance of the evidence" standard, rather than a higher standard.  But OCR expressly *instructs* that a preponderance standard "is the appropriate standard" and that higher standards "are inconsistent with the standard of proof established for violations of the civil rights laws, and are thus not equitable under Title IX."  (*Id.* at p. 11.)  And Sterrett complains that he was not permitted to cross-examine his accuser in a live hearing.   But the OCR "strongly discourages" schools from permitting cross-examination of a sexual-assault victim because "[a]llowing an alleged perpetrator

---

[1]  Available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.  This is a "significant guidance document" issued by the Department of Education pursuant to its regulatory authority under 72 Fed. Reg. 3432.

to question an alleged victim directly may be traumatic or intimidating, thereby possibly escalating or perpetuating a hostile environment." (*Id.* at 12.)

Sterrett, in other words, asks the Court to impose through this litigation heightened procedural protections that the U.S. Department of Education has determined not only are not *required* during university sexual-assault investigations, but in fact would violate Title IX and make the critical problem of sexual assault on college campuses even worse. The Court should decline Sterrett's invitation to write these counterproductive measures into the law. As the Department of Education has stated: "[A] Title IX investigation will never result in incarceration of an individual and, therefore, the same procedural protections [as in a criminal matter] are not required. Further, while a criminal investigation is initiated at the discretion of law enforcement authorities, a Title IX investigation is not discretionary; a school has a duty under Title IX to resolve complaints promptly and equitably to provide a safe and nondiscriminatory environment for all students, free from sexual harassment and sexual violence." (OCR, Questions and Answers on Title IX and Sexual Violence, at 28, F-23 (Apr. 29, 2014)).

Sterrett received far more than the baseline requirements of due process— notice and the opportunity to be heard—and the Court should dismiss this action for failure to state a claim upon which relief can be granted.

## 2.      Sterrett Received Notice

Sterrett argues in his brief that he did not have "basic notice" that the University was investigating him for sexual misconduct.  (Resp. at 21.)  But his own allegations in the complaint show otherwise.

Sterrett's allegations show he *did* have notice, on August 6, 2012.  He alleges expressly that on that date he "learned that Complainant had made a verbal complaint to Cowan and that Cowan was also assigned to 'investigate[.]'" (Compl. ¶ 31.)  He alleges expressly that he knew the allegations involved "sexual misconduct."  (*Id.*)  He alleges expressly that he knew the allegations were "made by a fellow [Michigan Research Community] member and friend, C.B. (Complainant)[.]"  (*Id.*)  And he alleges expressly that he knew this was someone "with whom Plaintiff had had consensual sex on one occasion, in Plaintiff's dorm room[.]"  (*Id.*)  Sterrett therefore had *clear and unequivocal* notice on August 6, 2012 of the precise act that the University was investigating, and the precise act for which the University ultimately disciplined him.  Sterrett certainly had notice sufficient to meet the "bare-minimum requirements of due process."  *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 631 (6th Cir. 2005).

Sterrett therefore had constitutionally adequate notice no later than August 6, 2012.  Sterrett then received *additional* notice—notice that still preceded additional opportunities to be heard and defend against the sexual-misconduct allegations.

Sterrett received a *typed, written* summary of his interview, on September 27, 2012, which provided further detail regarding the sexual-misconduct allegations, if there could be any doubt previously. (Compl. ¶ 56.) And Sterrett *expressly admits* in paragraph 81 of his complaint that he had notice no later than November 5, 2012. The University on that date provided Sterrett, *in writing*, with a "Summary of Witness Testimony and Other Evidence." (Compl. ¶ 80.) Sterrett admits that this document gave him specific notice of the sexual-misconduct charges against him sufficient to respond to the allegations: He alleges expressly that he responded in writing on November 9, 2012 with "five single-spaced pages of additional information," provided a "paragraph by paragraph response/rebuttal to each alleged statement," and listed "concerns about key omitted facts and information." (*Id.*) This shows that he had notice of *exactly* the nature of the allegations against him. Indeed, in his response Sterrett *admitted* that he had notice of the specific charges against him, and that he contested the charges: "I understand that the complainant now says that the sexual relationship was not consensual, that she said 'no'. I cannot state it more clearly that this is untrue." (*Id.* ¶ 81(e).)

Sterrett is therefore flat wrong in his brief that the University cannot point to a specific "date" on which he had notice, and flat wrong that the University's position is that notice occurred "over the course of a year" or "eventually shook out in the wash." (Resp. at 21.) Sterrett had notice on August 6, 2012. In the

4

alternative, he had notice no later than September 27 or November 5, 2012. These specific dates are based on Sterrett's own allegations in the Complaint. (Compl. ¶¶ 31, 80-81.) Each date came weeks or months before the University issued even a *draft* report of its investigation findings on November 20, 2012, and before the finalized report on November 30, 2012. (*Id.* ¶¶ 86, 93.) And long before the University issued its decision imposing sanctions on February 1, 2013. (*Id.* ¶ 137.)

Sterrett argues that the Court at this stage simply has to accept without question his allegation that he did not receive notice. On page 20 of his response, he includes a long list of supposedly "specific allegations" showing lack of notice. But these allegations are simply conclusory legal allegations such as "Defendants actions' were arbitrary and capricious," and "Defendants' conduct was so egregious as to shock the conscience." (Resp. at 20-21.) The Court does *not* accept these conclusory legal allegations as true for purposes of a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (courts "are not bound to accept as true a legal conclusion couched as a factual allegation") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).[2] And the actual *factual* allegations in the Complaint demonstrate that Sterrett had notice of the sexual-misconduct charges against him.

---

[2] Sterrett argues that somehow *Twombly* and *Iqbal* do not apply in this case. (*See* Response at 17: "This is not a case that raises questions under the Supreme Court's guidance several years back relating to 'plausibility' in pleading.") *Twombly* and *Iqbal* are controlling U.S. Supreme Court cases, and Sterrett must meet their requirements to survive a motion to dismiss.

Sterrett argues that the August 6 notice was not specific enough, and that he had to "glean[]" from the investigator's questions the nature of the allegations. (Response at 23; Compl. ¶ 31.)  His allegations set forth above show otherwise— he knew precisely who had made the allegations, that the allegations were sexual-misconduct ones, and that the University was investigating the allegations and considering discipline.  (Compl. ¶ 31.)  Moreover, he certainly had specific notice by November 5, as demonstrated unequivocally by his detailed "paragraph by paragraph response/rebuttal" of the charges against him.  (Compl. ¶ 81.)[3]

Sterrett also argues that the August 6, 2012 notice was insufficient because it came *during* the University's investigatory interview of him, as opposed to before it.  (Resp. at 22.)  The fallacy of Sterrett's argument is the suggestion that the August 6, 2012 interview was his only opportunity to be heard.  He argues based on this false premise that he therefore was entitled to notice "first"—prior to the interview.  (*See* Resp. at 22, quoting *Goss*, 419 U.S. at 579.)  But as set forth in detail in Defendants' motion at pages 2-10, and as discussed further below, Sterrett

---

[3] Sterrett also complains that Defendants failed to comply with University policies. (Compl. ¶ 54). But even if this were true, this would not constitute a due process violation. *See Jaksa v. Regents of the Univ. of Mich.*, 597 F. Supp. 1245, 1251 (E.D. Mich. 1984) (rejecting an argument that university "procedural irregularities rise to the level of constitutional violations" because "[a] state agency's disregard of its own regulation is a constitutional deprivation only where there is an independent due process right to the procedure contained in the agency's rule"), *aff'd*, 787 F.2d 590 (6th Cir. 1986); *see also Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 774 (7th Cir. 2013) ("It may have been unfair for the university not to follow its own procedures in Charleston's case, but it was not unconstitutional").

had *abundant* opportunities to be heard after his August 6 interview, and he availed himself of all those opportunities—including through an additional in-person meeting with a University official, in extensive written submissions by him and his retained counsel, and throughout his appeal process.  (Compl. ¶¶ 117, 81-82, 118-21, 139-42.)  Moreover, Sterrett cites no authority holding that notice must be given before a university's investigatory interview.  To the contrary, this Court held in *Jaber v. Wayne State Univ. Bd. of Gov.*, 788 F. Supp. 2d 572 (E.D. Mich. 2011) that notice does *not* have to be given before the investigation commenced. The Court there held that notice was sufficient where the "notice came *after* [the dean] conducted a three-week investigation."  *Id.* at 573 (emphasis added).[4]

Sterrett argues that notice was insufficient because he supposedly "was not advised what rule he had broken and how."  (Resp. at 20.)  But that is the same argument this Court rejected in *Jaber*.  The plaintiff there argued that the university's notice and policies "did not list degree revocation as a potential sanction."  788 F. Supp. at 576.  The Court rejected the argument Sterrett is making here, explaining that "the Sixth Circuit has never held that an accuser must formalize, in writing, all contemplated sanctions an accused faces before notice can be said to pass constitutional muster."  *Id.*  The Court noted that the plaintiff had in

---

[4] Even notice given during the sole opportunity to be heard would not necessarily be deficient under the Due Process Clause.  *See Goss v. Lopez*, 419 U.S. 565, 582 (1975) ("There need be no delay between the time 'notice' is given and the time of the hearing").

fact challenged the revocation of his degree—"in fact, Plaintiff pleaded with Dean Wood not to revoke her degree"—which demonstrated that "[n]otice was thus sufficient to make the eventual hearing meaningful." *Id.* at 577.  After all, the purpose of the notice requirement is to ensure that the accused has a meaningful opportunity to "respond, explain, and defend" against the charges, and evidence that the accused in fact availed himself of that opportunity demonstrates he had notice sufficient to do so.  *Flaim*, 418 F.3d at 635; *see Sarver v. Jackson*, 344 F. App'x 526 (11th Cir. 2009) (affirming dismissal under Rule 12(b)(6) where student alleged she was "only given a general statement of the charges"); *Watson v. Beckel*, 242 F.3d 1237, 1241 (10th Cir. 2001) ("Because Mr. Watson already knew the allegations he faced, he would have received little or no additional benefit from a written notice that specified the charges against him").[5]

Sterrett also argues that notice was deficient because the University amended its investigation report "[i]n response to [] new information" from a witness, which suggested the victim was intoxicated at the time of the sexual misconduct.  (Resp. at 24-25.)  But first, this demonstrates the University's flexibility and openness to new information during the investigation, not the "railroading" Sterrett alleges.  It was, after all, in response to Sterrett's concerns

---

[5] The Supreme Court stated in *Goss* that a student is simply entitled to "some kind of notice," and held there that oral notice was sufficient.  419 U.S. at 579; *see Flaim*, 418 F.3d at 634 ("In *Goss*, oral notice sufficed . . .").

that the University re-interviewed the witness.  (*See* Compl. ¶¶ 117-120.)  Sterrett

again does not like the *result* of that re-interview, but it shows the reasonableness

of the University's process, not a denial of due process.  And second, Sterrett's

argument fails as a matter of notice law.  His argument is again based on the false

premise that he was afforded no further opportunity to be heard and thus that the

notice he received was insufficient to provide him an opportunity to respond.  But

the Addendum to the investigation report was issued on January 8, 2013.  *After* that

date, Sterrett, through counsel, submitted detailed written objections, and

"submitted multiple affidavits to correct the record and supply important

evidence," including a "detailed affidavit from his roommate," "[h]is own eight

page affidavit," and three other affidavits.  (Compl. ¶¶ 130-31.)  Sterrett availed

himself of all of these opportunities to be heard *before* the University issued its

initial sanctioning decision on February 1, 2013.  (*Id.* ¶ 137); *see Watson*, 242 F.3d

at 1242 ("because Mr. Watson received proper notice regarding the charge of

assault and was expelled for the assault, Mr. Watson would not be prejudiced by

the board justifying expulsion on additional grounds").

At bottom, it simply strains credulity (and the "plausibility" pleading

requirement) to say that Sterrett did not have notice of the sexual-misconduct

allegations against him.  Notice is constitutionally adequate when it provides the

plaintiff a meaningful opportunity to "respond, explain, and defend" against the

allegations. *Flaim*, 418 F.3d at 635.  And the Court here does not have to guess whether Sterrett received that notice; Sterrett expressly alleges that he *did* have notice, and expressly alleges that he thereafter *availed* himself repeatedly and extensively of the opportunity to respond, explain, and defend against the charges. To hold that this was insufficient notice would require a vast re-writing of court precedent.[6]

### 3.   Sterrett Received An Opportunity To Be Heard

Sterrett argues that "it is <u>uncontested</u> that plaintiff received no hearing, no matter how informally defined."  (Resp. at 26; Sterrett's emphasis.)  His own allegations again show that is simply not true.

As Sterrett acknowledges, a student receives a constitutionally adequate "opportunity to be heard" when the university provides an "opportunity to respond, explain, and defend" against the accusations.  *Flaim*, 418 F.3d at 635.  And he alleges in the complaint not only that the University provided those opportunities, but that he in fact availed himself of them.  Sterrett twice met with University

---

[6] Sterrett was removed from the Michigan Research Community (MRC) program in August, 2012. But Sterrett cites no authority for the proposition that he had a significant and constitutionally protected liberty or property interest in participating in the MRC. Being removed from the MRC was a commonsense interim measure taken to protect students during the pendency of the investigation, and did not prevent Sterrett from "pursuing an education" at the University. *Flaim*, 418 F.3d at 633 (quotation omitted). Because Sterrett's interest in remaining part of the MRC was minimal, the University's procedures, including the interview with Ms. Cowan, provided Sterrett adequate notice and opportunity to be heard with respect to his removal from the MRC, to the extent required. *See Flaim*, 418 F.3d at 634; *accord Dear Colleague Letter* at 15-16 (noting schools' obligation to take interim measures to protect complainants and recommending moving alleged perpetrators to different dormitories).

officials to explain his version of events (once via video conference, once in person) (Compl. ¶¶ 25, 31, 117); he challenged witness statements extensively and in writing, including in what he calls a "paragraph by paragraph response/rebuttal to each alleged statement" (*id.* ¶¶ 81-82); he responded to and challenged a draft of the investigation report (*id.* ¶ 88-89); he submitted his own evidence, including "multiple affidavits" (*id.* ¶¶ 130-31); and he retained an experienced lawyer to file extensive briefing further challenging the accusations during a formal appeal process (*id.* ¶ 118).[7]  All of this—and more (*see* opening brief at 2-10)—occurred before the University issued sanctions against Sterrett on February 1, 2013 and long before the University amended and finalized the sanctions on July 28, 2013. (*Id.* ¶ 137.)

That is precisely the sort of "give-and-take" that courts have held satisfies the due-process right to be heard.  *Goss*, 419 U.S. at 584.  Sterrett availed himself of extensive opportunities to "give his version of the events" and "to characterize his conduct and put it in what he deem[ed] the proper context." *Id.* at 583-84.

Sterrett's argument that he "received no hearing" seems to be based on his assumption that only a live, in-person, full-dress formal hearing could satisfy due

---

[7] There is no absolute right to counsel in student disciplinary proceedings. *See Flaim*, 418 F.3d at 636.  Representation by counsel, however, is a strong indication that due process was provided. *See, e.g.*, *Smith v. Va. Military Inst.*, 2010 WL 2132240, at *4 (W.D. Va. May 27, 2010) (dismissing case, in part, because the student "was represented by counsel throughout the[] proceedings").

process.  (*See* Resp. at 26.)  He cites absolutely no authority supporting that assumption.  Indeed, although Sterrett attempts to distinguish the cases the University cited in its brief, he offers not a *single* case of his own even purporting to support his position.  (*See* Resp. at 26-32.)[8]

　　　And the caselaw is clear on this point:  A "hearing" does not have to be live and in-person—a hearing or hearings may be "formal, informal, live or not." *Flaim*, 418 F.3d at 635.  Moreover, courts have been "unanimous" that a "hearing" "need not be open to the public" and that "neither rules of evidence nor rules of civil or criminal procedure need be applied."  *Id.*; *see also Medlock v. Trs. of Ind. Univ.*, 738 F. 3d 867, 871 (7th Cir. 2013) (stating that courts should be "reluctant to encourage further bureaucratization by judicializing university disciplinary proceedings").

　　　Courts have expressly rejected "live-hearing-only" arguments like Sterrett makes here.  The published decision in *Roach v. Univ. of Utah*, 968 F. Supp. 1446 (D. Utah 1997) is on point.  *Roach* was also a university sexual-misconduct case— a graduate student was dismissed from a clinical psychology training program after having a sexual relationship with a patient.  *Id.* at 1449.  Like Sterrett, the plaintiff there met with university officials to "answer questions regarding his conduct" and

---

[8] Sterrett complains that two of the cases Defendants cited arose in the context of academic sanctions rather than disciplinary sanctions, but the analysis in those cases is still persuasive.  Moreover, the controlling cases of *Flaim*, *Jaksa*, and *Jaber* all involved *disciplinary* sanctions.

explain his version of events. *Id.* at 1452. But the plaintiff was not provided a full-dress hearing and "was not allowed to hear or cross-examine witnesses." *Id.* Instead, the officials with whom the plaintiff met issued a disciplinary recommendation to the faculty, and the faculty then held a meeting (outside of the plaintiff's presence) and voted to dismiss him. *Id.* The plaintiff argued that "he was denied procedural due process because he was not present at the faculty meeting and thus was denied the opportunity to present his side of the story to the entire faculty." *Id.* The court rejected this argument: the plaintiff "was given a full opportunity to explain his situation to [the university officials that initially interviewed him] and then later to [the department chair]." *Id.*

That's precisely what happened here: Sterrett was given a full opportunity to explain his situation to the University investigator and then later to another University official in an in-person meeting to challenge the investigator's findings. (Compl. ¶¶ 31, 117.) Sterrett in fact received far *more* process than in *Roach*. There is, for example, no indication in *Roach* that the plaintiff engaged in any of the extensive briefing, "paragraph by paragraph response/rebuttal" of witness statements, and submission of witness affidavits that Sterrett engaged in here. The plaintiff in *Roach* simply received two meetings with university officials—the first an investigatory interview, and the second to contest the interviewers' recommendation of discipline. 968 F. Supp. at 1452. The court held that "[t]hese

13

procedures *more than adequately* provided Roach with pre-dismissal due process." *Id.* (emphasis added).[9]

Other courts have reached the same conclusion. In *Parker v. Duffey*, 251 F. App'x 879 (5th Cir. 2007), three university students were suspended for two years for diverting money from student organizations. The court held that they "had ample opportunity to be heard: they had two meetings with [university officials], two meetings with [another official], and they each met with a [faculty review committee]. While none of these meetings were formal, trial-type hearings, both [plaintiffs] were able to fully discuss the charges against them and present evidence supporting their contentions. *That is all the Due Process Clause requires in this situation*." *Id.* at 883 (emphasis added); *see also Tigrett v. Rector & Vis. of Univ. of Va.*, 290 F.3d 620, 625, 629 (4th Cir. 2002) (the university president increased the punishment recommended by a fact-finding body without meeting with the disciplined students, and the court held that the students' "contention that they possess some due process right to appear before the final decision-maker is without merit") (citing *Bates v. Sponberg*, 547 F. 2d 325, 332 (6th Cir. 1976)).

Sterrett also argues that he was denied an "opportunity to be heard" because he was not permitted to cross-examine witnesses, including the victim. Courts

---

[9] On the issue of a separate disciplinary action in the case, *Roach* held that there was a fact issue whether plaintiff was denied his due-process rights because the university afforded no process at all before imposing the discipline. *Id.* at 1453.

have repeatedly rejected that argument as well.  *See Jaksa v. Regents of the Univ.
of Mich.*, 597 F. Supp. 1245, 1252 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir.
1986) ("The Constitution does not confer on plaintiff the right to cross-examine his
accuser in a school disciplinary proceeding") (collecting cases).  Simply put, there
is "no basis in the law" for the proposition that "a trial-like proceeding, with the
attendant right to call and cross-examine witnesses" is required before disciplining
a student.  *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F.
App'x 515, 520 (4th Cir. 2005).  School officials are permitted to exercise their
discretion to "determine [whether] to summon the accuser [or] permit cross-
examination." *Goss*, 419 U.S. at 584.  And, as noted above, the U.S. Department of
Education "strongly discourages" schools from permitting cross-examination of a
sexual-assault victim.  (*Dear Colleague Letter* at 12.)

The decision in *B.S. ex rel. Schneider v. Bd. of Sch. Trs., Fort Wayne Cmty.
Sch.*, 255 F. Supp. 2d 891 (N.D. Ind. 2003) is instructive on this point.  There, a
high-school student was expelled for inappropriate sexual conduct.  *Id.* at 894, 896.
The student alleged a due-process violation because officials "did not allow him to
cross-examine his student accusers."  *Id.*  The court rejected that claim, noting that
"*the clear weight of authority holds that a student facing an expulsion hearing
does not have the right to cross-examine witnesses or even learn their identities*."
*Id.* at 899 (collecting cases) (emphasis added).

15

At the heart of Sterrett's claims is the idea that the University should have accepted his version of events because he finds that version particularly compelling. (*See* Compl. ¶¶ 93-115.) But this Court must only decide whether the University's actions were "consistent with the bare-minimum requirements of due process." *Flaim*, 418 F.3d at 638. Sterrett "argues that [the University] was wrong to believe the charges against [him] . . . . But that argument, even if true, does not rise to the level of a procedural due process violation." *Butler*, 121 F. App'x at 520; *cf. McDonald v. Sweetman*, 2004 WL 717166, at *4 (D. Conn. Mar. 24, 2004) ("While [plaintiff] may rightly feel that she was tried, convicted, and sentenced by school officials who had already made up their minds, the fact remains that before she was suspended, [plaintiff] was given oral notice of the charges against her, an opportunity to present her version of the facts, and an explanation, however feeble, of the evidence against her. That is all the process that is required under the Constitution.")

In sum, Sterrett received a constitutionally sufficient opportunity to be heard that was appropriate for a university sexual-misconduct process. *See Flaim*, 418 F.3d at 634. He met twice with University officials to explain his side of the story, and submitted extensive written materials, including ones prepared with the assistance of counsel, in which he "responded, explained, and defended" against the allegations.

16

Sterrett does not like the result of the proceedings, but the Court's job is not to evaluate the outcome; it only examines the process. Here, the process met and exceeded the "bare-minimum requirements of due process." *Id.* at 632.

**4.     Sterrett's First Amendment Claim Fails**

Sterrett offers no case even remotely supporting his novel theory that a university violates the First Amendment when it tells a student accused of sexual misconduct not to discuss the case with his victim or other witnesses. This is a routine practice, a commonsense one, and one the U.S. Department of Education expressly endorses: "the school may prohibit the alleged perpetrator from having any contact with the complainant pending the results of the school's investigation." (*Dear Colleague Letter* at 15.)

In response, all Sterrett offers are "prior restraint" cases applicable in other inapposite contexts, such as the regulation of strip clubs. *See Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2002). And one of those cases is no longer good law even in that context. *See 729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485, 498-99 (6th Cir. 2008) (recognizing that "the central holding of *Nightclubs* . . . is no longer controlling" because of an intervening U.S. Supreme Court case).

At any rate, it would have been constitutionally permissible for University officials to instruct Sterrett not to speak to witnesses during the investigation even

if this were a "restraint" on speech.  School officials may limit student speech that has the potential to harm other students.  *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969); *Barr v. Lafon*, 538 F.3d 554, 562 (6th Cir. 2008); *see also Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000) (recognizing the importance of preserving campus safety).  That interest is particularly strong when school officials are dealing with allegations of sexual misconduct.  *See Bonnell v. Lorenzo*, 241 F.3d 800, 823 (6th Cir. 2001) (holding that preserving student confidentiality and maintaining a hostility-free environment outweighed a professor's right to speak about the sexual harassment allegations against him).  And, as the U.S. Department of Education has recognized, there was a real potential for harm in this case, because "complaints of sexual harassment or violence may be followed by retaliation by the alleged perpetrator[.]"   (*Dear Colleague Letter* at 16.)  Thus, as the U.S. Department of Education expressly instructs, it was entirely appropriate for the University to "prohibit [Sterrett] from having any contact with the complainant pending the results of the school's investigation." (*Id.* at 15.)  By complying with this federal regulatory admonition, the University certainly did not violate Sterrett's First Amendment rights.[10]

Sterrett fails to state a claim for violation of the First Amendment.

---

[10] Moreover, Sterrett's assertions that he was deterred or restrained from speaking to other students do not survive his own recitation of the facts.  Sterrett alleges he was told not to "talk to any potential witness about the complaint." (Compl. ¶ 41). But he acknowledges that this had no "chilling effect" on his speech—he in fact *did* speak to multiple witnesses.  (*See* Resp. at 34-35; Compl. ¶ 43.)

**5.    Defendants Are Entitled to Qualified Immunity**

Finally, Sterrett's damages claims fail as a matter of law because Defendants are entitled to qualified immunity.  As shown above, Defendants did not violate Sterrett's constitutional rights.  Moreover, any right to the additional procedures Sterrett seeks was not "clearly established."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Sterrett's only response is that "Defendants themselves admit that Due Process protections do apply" and that the basic due-process requirements of notice and the opportunity to be heard were clearly established at the time he was disciplined.  (Resp. at 35-36.)  But the question is not whether the Due Process Clause itself or general due-process principles were clearly established at the time of Sterrett's discipline.  The question is whether the specific process Sterrett seeks—an in-person, live hearing, the right to cross-examine an accuser, to receive sworn witness statements, and to contact witnesses during the investigation—were clearly established such that Defendants "knowingly violate[d] the law" by denying him that process.  *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012).  These "rights" were not clearly established; to the contrary, case law in this Circuit and elsewhere does not impose them, let alone clearly.  A right can be clearly established without a case precisely on point, but in that instance "existing precedent must have placed the . . . question beyond debate."  *Ashcroft v. al-Kidd*,

131 S. Ct. 2074, 2083 (2011).  That is, the due-process right to any particular process is only "clearly established" when "every reasonable official would have understood that what he [was] doing violate[d] that right."  *Id.* at 2083.  Sterrett completely fails to meet his burden of demonstrating that the expansive due-process or First Amendment rights he attempts to invoke were clearly established. Defendants therefore are entitled to qualified immunity.

**6.    All Parties Agree that No Discovery is Necessary to Resolve this Motion**

Sterrett concedes that the issues raised in Defendants' motion are purely legal issues, that "the Court can adopt the Defendants' minimalist view of the process that was due," and that "the Court's role at this stage is not to evaluate the facts going to the quality of notice or the elements of an opportunity to respond." (Resp. at 19, n.2.)  Sterrett concedes, in other words, that Defendants' motion is ripe for adjudication now, without any further discovery.  Defendants agree, and respectfully request that the Court grant the motion and dismiss the action with prejudice.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:   s/Thomas W. Cranmer
      Thomas W. Cranmer (P25252)
      David O'Brien (P65532)
      Paul D. Hudson (P69844)
      Miller Canfield Paddock & Stone, PLC
      840 West Long Lake Road, Suite 200
      Troy, Michigan 48098
      Telephone: (248) 879-2000
      cranmer@millercanfield.com
      *Counsel for Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spencer, Susan Pritzel, E. Royster Harper, Malinda Matney, Anthony Walesby, and Laura Blake Jones*

Date: July 1, 2014

21

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will serve all registered parties.

MILLER, CANFIELD, PADDOCK AND STONE, PLC

By:  s/Thomas W. Cranmer
      Thomas W. Cranmer (P25252)
      David O'Brien (P65532)
      Paul D. Hudson (P69844)
      Miller Canfield Paddock & Stone, PLC
      840 West Long Lake Road, Suite 200
      Troy, Michigan 48098
      Telephone: (248) 879-2000
      cranmer@millercanfield.com
      *Counsel for Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spencer, Susan Pritzel, E. Royster Harper, Malinda Matney, Anthony Walesby, and Laura Blake Jones*

Date: July 1, 2014

22424910.5\060548-00402