UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DREW STERRETT**,

    Plaintiff,

vs.

**HEATHER COWAN, JAY WILGUS, STACY VANDER VELDE, THEODORE SPENCER, SUSAN PRITZEL, MIKIKO SENJA, E. ROYSTER HARPER, MALINDA MATNEY, ANTHONY WALESBY** and **LAURA BLAKE JONES**, employees of the University of Michigan, sued in his or her personal and official capacities, jointly and severally,

    Defendants.

Case No. 2014-CV-11619
Hon. Denise Page Hood
Mag. Michael J. Hluchaniuk

---

| | |
|---|---|
| DEBORAH GORDON LAW | MILLER CANFIELD PADDOCK & |
| Gordon, Laughbaum & Prescott | STONE, P.L.C. |
| Deborah L. Gordon (P27058) | Thomas W. Cranmer (P25252) |
| Carol A. Laughbaum (P41711) | David O'Brien (P65532) |
| Attorneys for Plaintiff | Paul Hudson (P69844) |
| 33 Bloomfield Hills Parkway, Suite 220 | Attorneys for Defs Cowan, Wilgus, |
| Bloomfield Hills, Michigan 48304 | Velde, Spencer, Pritzel, Harper, |
| Telephone 248 258 2500 | Matney, Walesby & Blake Jones |
| dgordon@deborahgordonlaw.com | 840 West Long Lake Road, Suite 200 |
| claughbaum@deborahgordonlaw.com | Troy, Michigan 48098 |
| | (248) 879-2000 |
| | cranmer@millercanfield.com |
| | hudson@millercanfield.com |

---

# PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE [41] TO PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [35]

I.  **Overview**

As set forth in his motion, Plaintiff seeks to amend his current lawsuit (due process and First Amendment claims) to include claims under Title IX and Michigan's Elliott-Larsen Civil Rights Act for gender discrimination.

The crux of Plaintiff's lawsuit is that he was drummed out of the University of Michigan, where he was a student, for alleged "sexual misconduct" based on a completely consensual sexual encounter. A female friend climbed into Plaintiff's bunk bed, they engaged in consensual kissing, the female requested that Plaintiff get a condom, and they had sex. The entire encounter occurred with a friend of the female in the room, literally in the bunk above them. Many months later, after the female's mother found and read her diary, the female filed charges with the University alleging the encounter had not been consensual. A university "investigation" ensued, which denied Plaintiff even rudimentary due process (notice of the charges and an opportunity to be heard) yet concluded - in a finding completely at odds with all logic, common sense and the actual facts and evidence - that Plaintiff was guilty of sexual misconduct. Defendants' actions have left a particularly stigmatizing black mark on Plaintiff's permanent record. At age 21, his ability to complete his education and fulfill his career plans have been destroyed.  **Complaint** (Dkt. # 1)

Since the original filing, and as revealed in the recent deposition of his accuser,

Plaintiff has become aware that in addition to being denied due process, his gender was very much a factor in how he was treated throughout the investigation (in contrast to his female accuser) and how the findings at issue were arrived at.

## II.   Defendants' Opposition to Plaintiff's Amendment is Frivolous

In Plaintiff's proposed First Amended Complaint (Dkt. # 35, Exhibit A) and as discussed below, he <u>alleges that from day one, Defendants operated with a predetermined and discriminatory mind set: that Plaintiff, a male student accused of sexual misconduct must be "guilty" and his female accuser a sexual assault victim.</u>

The Amended Complaint alleges a violation of Title IX which broadly prohibits gender discrimination by any educational institution receiving federal financial assistance:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance...

20 USC ¶1681(a).

The Amended Complaint also alleges a violation of Michigan's Elliott-Larsen Civil Rights Act which also prohibits sex discrimination by educational institutions:

> An educational institution shall not do any of the following:
>
> (a) Discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of ... sex.

>   (b) Exclude, expel, limit or otherwise discriminate against an individual ... enrolled as a student in the terms, conditions, or privileges of the institution, because of ... sex.

MCL 37.2402

Defendants frivolously oppose amendment, urging this Court to disregard the liberal amendment standard set forth in Fed.R.Civ.P 15(a)(2). The Supreme Court has confirmed that Rule 15's "mandate [of liberally allowing amendments] is to be heeded":

>   Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires', this mandate is to be heeded ... In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc., – **the leave sought should, as the rules require, be 'freely given.'**

*Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962) (emphasis added).[1]

None of the *Forman* exceptions apply to warrant denial of amendment. This is a recently filed case in which discovery has barely commenced. Defendants' sole argument, which is unfounded, is that amendment would be "futile" because Plaintiff's proposed amended complaint lacks sufficient facts supporting his Title IX and ELCRA gender discrimination claims. "Futility" exists only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

---

[1] The "thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557 559 (6th Cir. 1986).

-3-

allegations. *Bauer v. RBX Industries, Inc.*, 368 F.3d 569, 585 (6th Cir. 2004); *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998). The court is required to construe the complaint in a light most favorable to the plaintiff, and accept all of his factual allegations as true. If an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Id.* Plaintiff's 50 page Complaint is replete with detailed facts, far more so than what is required by the Court Rules.

In truth, it is apparent that Defendants' opposition to Plaintiff's motion to amend has little to do with a legitimate claim that Plaintiff's Complaint lacks detail, but is instead a vehicle to avoid all liability and chastise Plaintiff for having pursued claims against Defendants in various forums.[2] Defendants' statement, "*Enough is*

---

[2]Defendants have seen fit to use their Response to mock Plaintiff for filing several cases. Plaintiff *has* unashamedly and vigorously pursued all potential legal avenues available to attempt to obtain redress for the appalling injustice inflicted upon him by Defendants. Plaintiff filed a companion case to this one in Washtenaw County Circuit Court (alleging identical due process and First Amendment claims) against the Regents of the University of Michigan, in that UM is immune from suit in federal court on those claims on the basis of sovereign immunity. Plaintiff voluntarily subsequently voluntarily dismissed that case, however, in that UM is not a "person" that can be sued under §1983. Plaintiff also filed a breach of contract case against UM in the Court of Claims, based on its written policies and procedures regarding the process to be afforded students facing disciplinary action. Recently, Judge Donofrio issued an order dismissing that case, finding that under the "prevailing view" of cases decided under Michigan law, UM's policies did not give rise to enforceable contract rights. The Court noted that the Plaintiff had a separate lawsuit involving his due process rights pending in federal court and "express[ed] no opinion on the merits of [that] claim for violation of due process" while noting that Plaintiff may have rights stemming from the Constitution, rather than the university policies at issue in that

-4-

*enough;*" "*this Court should also enter an order prohibiting Plaintiff from attempting to assert any additional claims arising from the facts at issue in this case*" says it all. Dkt. ## 41, pp 4, 18. Defendants, feigning outrage at having to answer for their actions, literally seek a legally unprecedented order which would violate the court rules and the Constitution.

Defendants also ignore the federal pleading requirement contained in Fed.R. Civ. P. 8(a), which requires only that a pleading "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has cautioned against the imposition of heightened pleading standards in specific areas of law, particularly in discrimination claims. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-515, 122 S.Ct. 992 (2002)(holding that imposing a heightened pleading standard in discrimination cases conflicts with the Federal Rules and the applicable liberal "notice pleading" standard; "*petitioner's complaint easily establishes the requirements of Rule 8(a) because it gives respondent fair notice of the basis for petitioner's claims.*"[3])

---

case.

[3]In *Swierkiewicz*, an employment discrimination case, the petitioner alleged he was terminated due to national origin in violation of Title VII and age in violation of the ADEA. His complaint detailed the events leading up to his termination, provided relevant dates, and included the names and nationalities of at least some of the relevant persons involved with his termination. *Id.*, 534 U.S. at 514. The Court agreed

Defendants' opposition to Plaintiff's motion to amend is completely without merit.

### III. Plaintiff has Pled Ample Facts in Support of his Title IX and ELCRA Gender Discrimination Claims

Contrary to Defendants' claims, Plaintiff's proposed First Amended Complaint contains specific facts setting forth the gender discrimination alleged, including Defendants' presumption from the onset that the female accuser was correct and the male accused was guilty, in violation of Title IX.

Title IX is a federal statute designed to prevent sexual discrimination and harassment by educational institutions receiving federal funding. 20 USC §1681(a) (*No person in the United States shall, on the basis of sex, shall be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance."*) The key inquiry in a Title IX disciplinary case is whether the university, in its initiation and prosecution of the disciplinary action, took the adverse action against the accused student "because of sex." *See Mallory v. Ohio University*, 76 Fed. Appx. 634, 638 (6th Cir. 2003). To *prevail* on a Title IX erroneous outcome theory, a Plaintiff ultimately needs only to prove that the disciplinary process was flawed due to his gender. *Wells v. Xavier University*, 2014

---

the allegations gave respondent fair notice of petitioner's claims and the grounds on which they rested. *Id.*

WL 972172, _ F.Supp.2d _ (March 12, 2014).[4]

Plaintiff has alleged specific facts showing he was treated differently "because of sex." Defendants' repeated assertion that Plaintiff's allegations are "conclusory" are without merit. Plaintiff's Complaint contained the following allegations:

¶46 ... From the day of the complaint Defendants presumed that Plaintiff had engaged in sexual misconduct and proceeded in accordance with that assumption..

¶¶48-51 [Before Plaintiff was even told there was a complaint against him, a decision had been made to remove him from his residence hall because the Complainant resided there, remove him as a peer mentor, and prohibit him from being near or having contact with friends/potential witnesses.] Complainant, on the other hand, remained in the Residence Hall with other MRC members, took on the role of peer mentor that Plaintiff had been removed from, and freely associated with all of her friends and the witnesses involved in the investigation.

¶92 In fact, Defendant Cowan had made her mind up early on, based solely on Complainant's meeting with her, that Plaintiff was "guilty." The result of her investigation was pre-ordained and she devoted very little time or energy to seeking facts.

¶¶95-97 [Defendant Cowan's final report] ignored all of the information provided by Plaintiff on November 9 and November 25, 2012... and hid [redacted] Plaintiff's comments and concerns [declaring them to be irrelevant.]

¶110 The Findings in the Report draw all inferences in the light most favorable to Complainant, are biased against Plaintiff, and are flat our wrong.

Plaintiff's proposed First Amended Complaint, ¶¶ 203-222, includes the

---

[4]A copy of *Wells* is attached as **Exhibit B**.

-7-

following additional specific factual allegations with respect to Plaintiff's gender discrimination claims:

¶208  From the onset, the investigation by Defendants' agents was biased against Plaintiff because of his sex, due in part to the perceived "epidemic" of sexual assaults on females by males on college campuses.

¶209  In discriminating against Plaintiff on the basis of his sex, Defendants were responding in part to a 2011 "Dear Colleague" letter from the U.S. Department of Education stating that acts of sexual violence "are vastly underreported" and that "[w]hen young women get to college, nearly 20% of them will be victims of attempted or actual sexual assault" (a now highly disputed and extrapolated figure, which came from a limited 2007 study).

¶210  Based on Plaintiff's gender there was a rush to judgment against him, in spite of the evidence and facts, leading to an erroneous outcome.

¶211  Defendants' agents were predisposed to discriminate against Plaintiff in a sexual misconduct investigation on the basis of his sex.

¶215  Defendants treated Plaintiff differently and less favorably with respect to his rights during the investigation on the basis of his sex, as compared to his female accuser.

¶216  Defendants treated Plaintiff differently and less favorably on the basis of his sex with regard to how the "findings" against him were arrived at.

¶217  Defendants intentionally treated Complainant preferentially on the basis of her sex by adopting without question all of her statements as correct, even where they were illogical or inconsistent with statements of witnesses and Plaintiff. Defendants ignored all evidence exculpatory to Plaintiff.

¶218  Defendants' "findings" were based on a pre-ordained desire and plan to adopt Plaintiff's allegations on the basis of gender.

¶219  Defendant intentionally ignored the requirement that the Complainant carried the burden of proof and instead shifted it to Plaintiff, on the basis of his gender.

¶220  Defendants violated its own self-created, lowered standard of proof by "a preponderance of the evidence," finding against Plaintiff in spite of the fact that the evidence did not meet this standard, on the basis of Plaintiff's gender.

¶221  As a direct result of its discriminatory practices, Plaintiff was denied adequate notice, and a fundamentally fair opportunity to be heard, and an erroneous outcome was reached.

Given the above allegations, Plaintiff's proposed First Amended Complaint clearly gives Defendants ample notice of Plaintiff's gender discrimination claims and is more than sufficient to satisfy Rule 15 (a). *Id.*, *Swierkiewicz*. There is no possible way, and none supported by any case law cited by Defendants, that the Title IX claim is "futile."

The case Defendants cite, *Thiokol Corp. V. Dep't of Treasury, State of Mich., Revenue Div.,* 987 F.2d 376, 383 (6th Cir. 1993), held that the amendment would be futile not because the pleading only had conclusory allegations but because the 1983 claim could not be brought against the state and the plaintiff did not name the officials in their individual capacities - therefore the court had no jurisdiction.

Case law is evolving with respect to Title IX "erroneous outcome" claims brought by students wrongly disciplined or expelled based on false sexual misconduct claims. In *Wells v. Xavier University*, *supra,* as here, the plaintiff alleged defendants

engaged in a flawed investigation and reacted against him, as a male, in quickly concluding he was guilty of rape, rushing to judgment, ignoring evidence and witnesses favorable to him, and issuing punishment. That court agreed the plaintiff had sufficiently alleged a Title IX "erroneous outcome" claim and denied defendants' attempt to dismiss the case under Rule 12(b)(6).

> [Plaintiff alleges] Xavier violated Title IX by reaching an erroneous outcome on the basis of sex.....To prevail on an erroneous outcome theory Plaintiff **would ultimately need to prove the hearing was flawed due to his gender.**.. Defendants contend Plaintiff's Complaint fails to adequately allege his gender affected the outcome of the hearing... The Court finds that taking all inferences in favor of Plaintiff... Plaintiff's erroneous outcome theory survives Defendants' challenge. Plaintiff's Complaint puts Defendants on adequate notice that he contends they have had a pattern of decision-making that ultimately result in an alleged false outcome that he was guilty of rape. Whether Plaintiff can unearth adequate evidence to support such claim against further challenge remains to be seen. His Complaint, however, recounts Defendants having rushed to judgment, having failed to train UCB members, having denied Plaintiff counsel, and having denied Plaintiff witnesses. These actions came against Plaintiff, he contends, because he was a male accused of sexual assault.

*Id.*, at *5.

Plaintiff's Complaint, similarly, is more than adequate to survive a 12(b)(6) challenge, and thus certainly more than adequate under the liberal amendment standard contained in Rule 15(a), *supra*.

Defendants have cited no case law where a court has denied amendment under comparable circumstances. Defendants dishonestly cite *Yusuf v. Vassar College*, 35 F.3d 709 (2nd Circuit 1994) suggesting a heightened pleading standard is required for

-10-

discrimination cases. *Yusuf* has been "effectively overruled by *Swierkiewicz,*" supra. See, e.g., *Goldvekht v. United Federation of Teachers,* 2009 WL 129495 at *3 (E.D. NY 2009). Nor did that case ever require a plaintiff to allege specific statements by decision makers showing gender bias, as Defendants suggest.

Defendants also cite *Scott v. WorldStarHipHop, Inc.*, 2011 WL 5082410 (S.D.N.Y 2011). That Title IX case stemmed from a classroom brawl between the plaintiff (a male) and 2 other (female) college students, which was caught on tape. Ultimately, the male (who the tape showed was the only one to throw punches) was disciplined most harshly following an ensuring university investigation and brought Title IX ('erroneous outcome' and 'selective enforcement') gender discrimination claims. There, the court granted the university's 12(b)(6) motion finding that the plaintiff had failed to allege facts casting 'articulable doubt" on the accuracy of the proceeding and circumstances suggesting that gender bias was a motivating factor in the result, particularly where his complaint failed to address the video proof that he had engaged in the most egregious behavior. *Id.* at *5-6. In *Doe v. University of the South*, 687 F.Supp.2d 744 (E.D. Tenn 2009), also cited by Defendants, the court granted the defendant's 12(b)(6) motion in a Title IX "erroneous outcome" case where the plaintiff alleged the university's investigation was "wrong, wilful, intentional, reckless and in violation of Title IX" but <u>failed to allege that the university's actions</u>

<u>were motivated by sexual bias</u> **or** a pattern of discriminatory decision making. *Id.* at 756. By contrast, Plaintiff *ha*s made specific allegations of gender-based bias. *See, e.g.*, **Exhibit A** ¶208 (From the onset, the investigation by Defendants' agents was biased against Plaintiff because of his sex, due in part to the perceived "epidemic" of sexual assaults on females by males on college campuses.) and additional Complaint excerpts cited above.

Defendants' citation to 'selective enforcement' cases, and the fact that Plaintiff has not alleged that any females accused of sexual misconduct were treated more favorably (Defendants' Brief pp 12-13) is also misplaced. While Plaintiff disputes that Defendants have properly set for the test for a 'selective enforcement' theory under Title IX, Plaintiff is not pursuing such a claim. It is axiomatic that no "one size fits all" formula exists for alleging and proving discrimination claims. *See Swierkiewicz*, 534 U.S. at 506 (the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized or ritualistic'.... The specification ... of the prima facie proof required is not necessarily applicable in every respect to differing factual situations.... To measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage is inappropriate.) Defendants' apparent argument that Plaintiff cannot state a Title IX claim absent an allegation that UM has a history of treating females accused of sexual misconduct

more favorably than Plaintiff (which would be *one* way of alleging a Title IX violation) does not comport with this reality. <u>What Plaintiff *does* allege are facts supporting his claim that Defendants formed conclusions, and took disciplinary action against him, on the basis of his gender</u>.

Defendants' disingenuous attempt to distinguish *Wells v. Xavier,* on the basis that Plaintiff has not alleged a "pattern" of gender discrimination is not well taken. That is not required, pursuant to the very case law cited by Defendants. *See Doe v. University of the South*, 687 F.Supp.2d at 756 (granting 12(b)(6) motion where plaintiff failed to allege that the university's actions against plaintiff were motivated by sexual bias *or* that the disciplinary process was part of a pattern of discriminatory decision making.)

With respect to Plaintiff's ELCRA gender discrimination claims, while Michigan law does not specifically discuss an "erroneous outcome" type claim in the context of a sexual misconduct investigation against a student, the Act broadly prohibits an educational institution from engaging in discriminatory behavior including <u>excluding, expelling, limiting or otherwise discriminating against a student because of sex, *supra*</u>. MCL 37.2402(b)

Because the education provisions of ELCRA have received little judicial interpretation and because the statutory language employs terms of art used and

judicially interpreted in the specialized but extensive field of employment discrimination, courts look to employment decisions for guidance. *See Fonseca v. Michigan State University*, 214 Mich App 28, 30, 542 NW2d 273 (1995). Thus, a plaintiff alleging discrimination in education is required to present a prima facie case of discrimination under the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). *Hazle v. Ford Motor Co*., 464 Mich 456, 462, 628 NW2d 515 (2001). Borrowing from the employment context, this approach requires a plaintiff to show he belongs to a protected class, he suffered an adverse action, he was otherwise qualified, and the adverse action <u>occurred under circumstances giving rise to an inference of unlawful discrimination.</u> *Pruitt v. Michigan State University*, 2011 WL 1600499 (MI App).

    As set forth above, and in accordance with Rule 15(a), Plaintiff has clearly alleged all these elements, including facts showing the disciplinary action taken against him occurred under circumstances giving rise to an inference of unlawful discrimination.

## IV. Relief Requested

For all the above reasons and as set forth in Plaintiff's motion (Dkt. #35), Plaintiff requests that this Court enter an Order granting him leave to file his First Amended Complaint.

In addition, Plaintiff requests that the Court exercise its inherent power to impose costs against Defendants for filing, in bad faith, a response to a motion to amend that is simply a tactical effort to delay. Defendants go so far as to frivolously request the unprecedented relief of an order "prohibiting [Plaintiff] from seeking to file any additional claims." Under the circumstances, Defendants have provided ample grounds for the imposition of sanctions against them. *See First Bank of Marietta v. Hartford Underwriters Insurance Co.*, 307 F.3d 501 (6th Cir. 2002).

Respectfully submitted,

**DEBORAH GORDON LAW**
**Gordon, Laughbaum & Prescott**
Deborah L. Gordon (P27058)
/s/Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
248-258-2500
**dgordon@deborahgordonlaw.com**

Dated: July 24, 2014   **claughbaum@deborahgordonlaw.com**

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2014, I electronically filed the foregoing document and Exhibit with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
**Gordon, Laughbaum & Prescott**
Deborah L. Gordon (P27058)
/s/Carol A. Laughbaum (P41711)
Attorneys for Plaintiff
 33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills Michigan 48304
248-258-2500
**dgordon@deborahgordonlaw.com**
**claughbaum@deborahgordonlaw.com**