UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DREW STERRETT,

      **Plaintiff,**

                                  **Case No. 14-cv-11619**

**v.**

                                **HON. DENISE PAGE HOOD**

**HEATHER COWAN, et al.,**

      **Defendants.**

_____/

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS,
DENYING MOTION TO AMEND COMPLAINT, MOOTING APPEAL,
DENYING MOTION TO COMPEL COMPLETE DEPOSITION
and
SETTING SCHEDULING CONFERENCE**

## I.   BACKGROUND

### A.   Procedural Posture

On April 23, 2014, Plaintiff Drew Sterrett filed the instant action against Defendants Heather Cowan, Jay Wilgus, Stacy Vander Velde, Theodore Spenser, Susan Pritzel, Mikiko Senja, E. Royster Harper, Malinda Matney, Anthony Walesby and Laura Blake Jones alleging a two-counts: 42 U.S.C. § 1983 - Fourteenth Amendment Due Process against all Defendants for money damages in their personal capacities and for injunctive relief in their official capacities (Count I) and 42 U.S.C. § 1983 - First Amendment Free Speech against Defendants

Cowan, Vander Velde, and Wilgus for money damages in their personal capacities and for injunctive relief in their official capacities (Count II).

In lieu of an Answer, Defendants filed a Motion to Dismiss Sterrett's Complaint under the Rules of Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.  Sterrett filed a response to the motion, and Defendants filed a reply to Sterrett's response.  After setting the matter for a hearing, the Court issued a Notice of Determination of Motion Without Oral Argument.  A Status Conference was held with the parties on July 28, 2014 wherein Sterrett's counsel expressed her strong position to proceed with discovery despite the pending Motion to Dismiss. The defense opposed Sterrett's request to proceed with discovery and requested that the discovery issues should take its course, which were before the Magistrate Judge.[1]  The parties agreed to submit their arguments on the Motion to Dismiss on briefs.

### B.    Factual Allegations in the Complaint

---

[1] Where a party files a Rule 12(b) motion, and where the district court accepts a plaitniff's allegations as true, but concludes that those allegations are insufficient as a matter of law, it is not an abuse of discretion to limit discovery *sua sponte*. *Flaim v. Medical College of Ohio*, 418 F.3d 629, 643 (6th Cir. 2005). Discovery is only appropriate where there are factual issues raised by a Rule 12(b) motion. *Id.* The district court does not abuse its discretion in limiting discovery pending its resolution of a 12(b)(6) motion. *Id.* at 644.

In the Fall of 2011, Plaintiff began his freshman year as an undergraduate student at the University of Michigan, School of Engineering.  (Comp., ¶ 19) Plaintiff was also admitted to the Michigan Research Community ("MRC"), a "learning community" offering incoming students a research partnership with a faculty member and the ability to be part of a community of other like-minded University of Michigan students.  (Comp., ¶ 20) As part of the MRC, Plaintiff lived on campus with other MRC students in the Mosher-Jordan Residence Hall. (Comp., ¶ 21) Plaintiff was assigned a roommate, Z.L., whom he had not known previously.  (Comp., ¶ 22) In May 2012, Sterrett completed his freshman year and left the campus.  (Comp., ¶ 24)

On August 6, 2012, Sterrett was contacted to set up an interview later that day with Cowan, an Equal Opportunity Specialist at the University, regarding an undefined student complaint against him.  (Comp., ¶¶ 5, 25) Later that day, Cowan began interviewing Sterrett via the audio/video remote hook-up Skype.  (Comp., ¶ 26) Sterrett claims that with no notice of the specific charges or complaint against him, he agreed to proceed with the interview.  (Comp., ¶ 30) Sterrett claims that at no point during the call/interview was he given notice of the specific allegations which had been made against him.  (Comp., ¶ 31) Instead, Sterrett claims he "eventually gleaned that it involved unspecified sexual misconduct allegations

3

made by a fellow MRC member and friend, C.B., the Complainant." (Comp., ¶ 31) Sterrett "learned that Complainant had made a verbal complaint to Cowan and that Cowan was also assigned to 'investigate'" the Complainant's allegations. (Comp., ¶ 31) During the phone interview, Sterrett provided detailed information regarding the sexual encounter between Complainant and Sterrett on March 16-17, 2012. (Comp., ¶ 32a.-x.) Sterrett claims that prior to being interviewed on August 6, 2012, he was never provided with a written statement of the allegations against him; nor was he ever advised verbally of the allegations against him. (Comp., ¶ 36)

On September 27, 2012, Sterrett received Cowan's typed summary of her verbal interview with Sterrett which took place on August 6, 2012. (Comp., ¶ 56) Cowan's activity log noted that she interviewed four unnamed witnesses on August 8, August 10, August 23 and August 25. (Comp., ¶ 57) Cowan produced on November 5, 2012, a one page "Summary of Witness Testimony and Other Evidence" to Sterrett. (Comp., ¶ 80)

On November 9, 2012, Sterrett responded to the Summary with a five-page single spaced document, listing concerns about key omitted facts and information, significant due process violations and raising specific questions. (Comp., ¶ 81) Sterrett provided a paragraph by paragraph response/rebuttal to each alleged

4

statement made by the unnamed witnesses.  (Comp., ¶ 82)  Cowan responded to Sterrett's response on November 19, 2012.  (Comp., ¶ 84)  Cowan issued a Draft Sexual Misconduct Report on November 20, 2012.  (Comp., ¶ 85)  Sterrett responded to the Draft on November 25, 2012, pointing out serious flaws, citing substantial additional relevant testimony and raising due process concerns. (Comp., ¶ 88)  Sterrett indicated that he was willing to testify under oath.  (Comp., ¶ 89)

On November 30, 2012, the Final Report was issued by Cowan who found that Sterrett engaged in sexual intercourse with the Complainant without her consent and that the activity was so severe as to create a hostile environment. (Comp., ¶ 93) Cowan determined that Sterrett's behavior constituted sexual misconduct and that he subjected Complainant to sexual misconduct in violation of University policy.  (Comp., ¶ 93) Sterrett challenged, in writing, the credibility and truthfulness of the unnamed witness.  (Comp., ¶ 103)

On December 6, 2012, Sterrett met with Vander Velde, the Associate Director for the Office of Student Conflict Resolution at the University ("OSCR"). (Comp., ¶¶ 7, 117).  At the meeting, Sterrett indicated to Vander Velde he was innocent and that a terrible mistake had been made.  (Comp., ¶ 117) Sterrett's representative thereafter sent a seven page letter to Defendants on December 11,

2012 identifying significant shortcomings in the investigation and denials of due process. (Comp., ¶ 118)  Cowan re-interviewed Sterrett's roommate on December 18, 2012 and issued an "Addendum to Sexual Misconduct Investigation Report Issued November 30, 2012," but did not alter the conclusion of the November 30, 2012 Report. (Comp., ¶¶ 120, 125)

Vander Welde provided Sterrett a Proposed "Resolution Agreement" decided upon by Matney, a Resolution Officer at the University, and Blake-Jones, the Dean of Students at the University, asking Sterrett to agree to be suspended from the University until May 1, 2016, and if re-enrolled at that time, Sterrett would be placed on disciplinary probation for another year. (Comp., ¶¶ 12, 14, 134) The sexual misconduct finding would remain permanently on Sterrett's educational record. (Comp., ¶ 134) Sterrett declined to agree to the proposed "Resolution Agreement" which would require him to admit to "sexual misconduct." (Comp., ¶ 136) On January 17, 2013, Sterrett's counsel sent another letter outlining the flaws in the investigation and the denial of due process. (Comp., ¶ 130) Sterrett also submitted multiple affidavits to correct the record and supply evidence missed by Cowan. (Comp., ¶ 131)

On February 1, 2013, Sterrett received Royster-Harper's (Vice President of Student Affairs at the University) decision upholding Cowan's Report and

6

Findings, and issuing sanctions against Sterrett, suspending him until July 2016. (Comp., ¶¶ 11, 137) Matney, Blake-Jones and Royster-Harper approved the sanctions without any analysis and ignored due process violations according to Sterrett. (Comp., ¶ 138)

On May 15, 2013, Sterrett submitted his appeal to the Appeals Board (Spencer, Pritzel, and Senja). (Comp., ¶¶ 8-10, 139) According to Sterrett, the Appeal was limited to: 1) whether there had been a material deviation from written procedures that substantially affected due process; 2) whether the sanctions were appropriate; 3) whether there was new evidence that could have reasonably affected the findings of the Report. (Comp., ¶ 139) On appeal, Sterrett presented a detailed statement proving that the findings were biased, were not properly arrived at, materially deviated from written procedures, lacked fundamental fairness, were reckless, and substantially affected due process. (Comp., ¶ 140) Sterrett also submitted four affidavits from witnesses with new, relevant information which could have reasonably affected the findings of the Report, and a one and a half page document requesting to be allowed to make a presentation and answer questions under oath. (Comp., ¶¶ 141-42) Sterrett's request to appear before the Appeals Board was denied. (Comp., ¶ 143) Sterrett claims the decision of the Appeals Board was a "rubber-stamp" of the flaws investigation and Report and

7

Addendum, but the Appeals Board "lessened" the period of suspension. (Comp., ¶ 147) In order to return to the University, Sterrett would have to admit to sexual misconduct, and agree to the sanctions, which would remain permanently on his record, which he did not do so. (Comp., ¶ 147) Sterrett's current status with the University is that he is not in good standing and has engaged in a violation of the University's sexual misconduct policy. (Comp., ¶ 148)

## II.   MOTION TO DISMISS

### A.   Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a case of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal citations omitted). Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2), *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard." *Id.* at 563. To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content must be "plausibility" suggestive of a claim entitling a plaintiff to relief. *Id.* The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

**B.   Due Process Claim (Count I)**

**1.   Law**

Defendants claim that Sterrett fails to state a procedural due process claim because the factual allegations in his Complaint shows Sterrett received the

appropriate notice and the opportunity to defend the allegations brought against Sterrett while a student at the University.  Sterrett responds that he never received any notice as to the allegations against him and that he was not given the appropriate due process before the University.

In *Goss v. Lopez,* 419 U.S. 565 (1975), the Supreme Court held that due process, in connection with the suspension of a student not exceeding ten days from a public school for disciplinary reasons, requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story."  *Id.* at 581; *Granger v. Klein,* 197 F. Supp. 2d 851, 874 (E.D. Mich. 2002).  *Goss* requires an "informal give-and-take" between the student and the administrative body dismissing him which would give the student "the opportunity to characterize his conduct and put it in what he deems the proper context."  *Id.* at 584; *Board of Curators of University of Missouri v. Horowitz,* 425 U.S. 78, 86 (1978).  Oral notice of potential sanctions is sufficient.  *Jaber v. Wayne State University Bd. of Governors,* 487 Fed. Appx. 995, 997 (6th Cir. Jul. 9, 2012); *Flaim v. Medical Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005).  The form of notice is to allow a student to prepare for an informal conference and defend the charges in a meaningful and informed manner.  *Jaber*, 487 Fed. Appx. at 997.

10

A claim that a school failed to follow its own procedure, posed as a claim that a state procedure was not followed, does not itself violate due process. *Id.* at 998; *JiQiang Xu v. Michigan State University,* 195 Fed. Appx. 452, 457 (6th Cir. Aug. 24, 2006); *DePiero v. City of Macedonia,* 180 F.3d 770, 787-88 (6th Cir. 1999). It is only when an agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that a federal court should intervene in the decisional processes of state institutions. *Id.*; *Bates v. Sponberg,* 547 F.2d 325, 329-30 (6th Cir. 1976). There need be no delay between the time notice is given and the time of the hearing. *Goss*, 419 U.S. at 582.

"A school is an academic institution, not a courtroom or administrative hearing room." *Board of Curators v. Horowitz*, 435 U.S. 78, 88 (1978). Similarly, a school disciplinary proceeding is not a criminal trial, and a student is not entitled to all of the procedural safeguards afforded criminal defendants. *Flaim,* 418 F.3d at 635, n. 1; *see, Jackson v. Dorrier,* 424 F.2d 213, 217 (6th Cir. 1970)("To hold that the relationship between parents, pupils and school officials must be conducted in an adversary atmosphere and accordingly the procedural rules to which we are accustomed in a court of law would hardly best serve the interests of any of those involved.") Notice as to the identity of an accuser or the opportunity to cross-examine an accuser is not part of the due process requirement. *Granger,*

197 F. Supp. 2d at 875, n. 1 (citing *Paredes v. Curtis*, 864 F.2d 426 (6th Cir. 1988)); *Jaksa v. Regents of the Univ. of Michigan*, 597 F. Supp. 1245, 1253 (D.C. Mich. 1984). The Constitution does not confer on an accused student the right to cross-examine his accuser in a school disciplinary proceeding. *Flaim*, 418 F.3d at 641.

### 2. Notice

Based on the detailed allegations in Sterrett's Complaint, it appears that at some point in time *after* the August 6, 2012 Skype interview with Cowan, Sterrett received both oral and written notice of the sexual misconduct claim against him. As to notice *prior* to the August 6, 2012 interview, Sterrett alleges in the Complaint that he was contacted to set up an interview regarding an "undefined" student complaint against him. (Comp., ¶¶ 5, 25) Sterrett claims that even without notice of the specific charges or complaint against him, he agreed to proceed with the interview. (Comp., ¶ 30) At no point during the interview was Sterrett given notice of the specific allegations made against him. (Comp., ¶ 31) Rather, Sterrett claims he "eventually *gleaned* that it involved unspecified sexual misconduct allegations made by a fellow MRC member and friend, C.B., the Complainant." (Comp., ¶ 31) (emphasis added) Sterrett states that he "*learned* that Complainant

12

had made a verbal complaint to Cowan and that Cowan was assigned to 'investigate'" the Complainant's allegations. (Comp., ¶ 31) (emphasis added)

The inference from the allegations in the Complaint is that Sterrett received verbal notice of the sexual misconduct allegation when he "gleaned" and "learned" from his conversation with Cowan that Complainant submitted a verbal complaint involving what Sterrett asserts as "unspecified sexual misconduct allegations." (Comp., ¶ 31) Sterrett was thereafter able to provide Cowan with specific details regarding the sexual encounter between Complainant and Sterrett on March 16-17, 2012, which shows that he knew the identity of the Complainant. (Comp., ¶ 32a.-x.)

The inference from the allegations in the Complaint is that Sterrett also received written notice of the sexual misconduct allegation against him. Sterrett received on September 27, 2012 Cowan's typed summary of her August 6, 2012 verbal interview with Sterrett, along with an activity log of her interview with four unnamed witnesses on August 8, August 10, August 23 and August 25. (Comp., ¶¶ 56-57) Cowan also produced on November 5, 2012 to Sterrett, a one page "Summary of Witness Testimony and Other Evidence." (Comp., ¶ 80) Prior to the issuance of a Final Misconduct Report, Cowan issued a Draft Sexual Misconduct Report on November 20, 2012. (Comp., ¶¶ 85-86) The Final Report was issued on

13

November 30, 2012.  (Comp., ¶¶ 92-93)  The University issued its sanctions on February 1, 2013, suspending Sterrett until July 2016.  (Comp., ¶ 137)

Based on the allegations in Sterrett's Complaint, the inference is that Sterrett received both verbal and written notices of the sexual misconduct allegation against him, prior to the November 30, 2012 Final Report and prior to the February 1, 2013 final decision to suspend Sterrett.  However, Sterrett asserts he did not receive any notice *prior* to the August 6, 2012 verbal interview conducted by Cowan.  As the Sixth Circuit noted, "[t]he stronger the private interest, however, the more likely a formal written notice–informing the accused of the charge, the policies or regulations the accused is charged with violating, and a list of possible penalties–is constitutionally required."  *Flaim*, 418 F.3d at 635.  "Longer suspensions or expulsions ... may require more formal procedures."  *Id.*  Sterrett's Complaint sufficiently alleges that he received no notice, verbal or otherwise, *prior* to the August 6, 2012, which may state a claim of a violation of his due process in light of the length of his suspension, from 2013 to 2016 (reduced on appeal, but the allegations do not state the amount of reduction).  As to notice *after* the August 6, 2012 interview and before the suspension order was issued on February 1, 2013, Sterrett fails to state a claim of lack of notice in violation of his due process rights as set forth above.

14

### 3.    Hearing

The verbal and written notices given to Sterrett *after* August 6, 2012 allowed him to defend the complaint against him in a meaningful and informed manner. *Jaber*, 487 Fed. Appx. at 997.  Sterrett denied the allegation of sexual misconduct during the August 6, 2012 interview with Cowan asserting Complainant never said "no" and "never pushed or attempted to push" Sterrett away during the sexual encounter.  (Comp., ¶ 32n.)  Sterrett was able to explain the evidence Cowan gathered and was able to present his side of the story, to characterize his conduct in what Sterrett deemed the proper context.  *Granger,* 197 F. Supp. 2d at 874; *Horowitz,* 425 U.S. at 86.  Sterrett responded on November 9, 2012 in writing to Cowan's Summary with a five-page single spaced document, listing concerns about key omitted facts and information, significant due process violations and raising specific questions.  (Comp., ¶ 81) Sterrett provided a paragraph by paragraph a response/rebuttal to each alleged statement made by the unnamed witnesses. (Comp., ¶ 82)  Sterrett responded by email to Cowan's Draft Report on November 25, 2012, pointing out what he claimed were serious flaws, citing substantial additional relevant testimony and raising due process concerns. (Comp., ¶ 88) Sterrett concluded the email by indicating that he was willing to testify under oath and that Due Process required that the charges against him

15

should be made under oath and that he have the right to cross-examine "anybody making such allegations."  (Comp., ¶ 89) Cowan did not address Sterrett's request to be heard.  (Comp., ¶ 90)

After the Final Report was issued on November 30, 2012, Sterrett met with Associate Director Vander Velde on December 6, 2012 at which time Sterrett indicated to Vander Velde he was innocent and that a terrible mistake had been made.  (Comp., ¶ 117) After the meeting with Vander Velde, Sterrett's representative sent a seven page letter to Defendants on December 11, 2012 identifying significant shortcomings in the investigation and noting the denial of due process.  (Comp., ¶ 118) As a result of this letter, Cowan re-interviewed Sterrett's roommate on December 18, 2012 and issued an "Addendum to Sexual Misconduct Investigation Report Issued November 30, 2012," but did not alter the conclusion of the November 30, 2012 Report.  (Comp., ¶¶ 120, 125) Sterrett's counsel responded to the Addendum with a January 17, 2013 letter outlining the flaws in the investigation and the denial of due process.  (Comp., ¶ 130) Sterrett thereafter submitted multiple affidavits to correct the record and supply important evidence which he claimed were missed by Cowan, including Sterrett's own eight page affidavit, his roommate's affidavit, affidavits from two of the Complainant's

16

friends, and an affidavit from a witness interviewed by Cowan rebutting Cowan's findings.  (Comp., ¶ 131)

Sterrett was sanctioned by Vice President Royster-Harper on February 1, 2013, which was approved by Matney and Blake-Jones.  (Comp., ¶¶ 137-38) Sterrett submitted his Appeal to the Appeals Board, with a detailed statement proving that Defendants' findings were biased and affected due process. (Comp., ¶ 140)  Four additional affidavits from witnesses were submitted.  (Comp., ¶ 141) Even with all this information before the Appeals Board, Sterrett asserts that its decision was a "rubber-stamp" of the "flawed investigation" and Report and Addendum.  However, the Appeals Board acknowledged the inconsistency of the testimonies and "lessened" the period of suspension.  (Comp., ¶¶ 144-47)

The factual allegations in Sterrett's Complaint show that Sterrett had multiple opportunities to deny and defend the allegations against him and present his side of the story by submitting to the University various writings, documents and multiple affidavits throughout the various layers of the process.  Sterrett met with the Associate Director to present his side of the story and was able to appeal the Vice President of Student Affairs' suspension sanction to the Appeals Board. The Appeals Board had before it the documents before the Vice President, but also additional documentation and affidavits submitted by Sterrett.  The Appeals Board

17

acknowledged the inconsistencies of the testimonies and decreased the period of suspension issued by the Vice President.

Sterrett argues that there was no hearing conducted by the University, even though he made such a request to Cowan.  (Comp., ¶ 89)  Cowan did not respond to the request.  (Comp., ¶ 90) Sterrett alleges that he "met" with Associate Director Vander Velde on December 6, 2012 (at which time Sterrett indicated to Vander Velde he was innocent and that a terrible mistake had been made).  (Comp., ¶ 117) Sterrett apparently claims that this December 6 meeting was *not* a "hearing" on the allegations against him.  "The hearing, whether formal, informal, live or not, must be meaningful and must provide the accused the opportunity to 'respond, explain, and defend.'" *Flaim*, 418 F.3d at 635.  Although the allegations in the Complaint show Sterrett was able to "respond, explain and defend" the alleged misconduct against him in various writings and had the opportunity to meet in person with Vander Velde, Sterrett has stated a plausible claim that he was denied a "hearing" *prior* to Cowan's November 30, 2012 Final Report and Findings.  (Comp., ¶¶ 89-93, 166) This November 30, 2012 Final Report and Findings (with supplements) was upheld on February 1, 2013 by Royster-Harper and the sanctions based on this Report were approved by Matney, Jones-Blake and Harper.  (Comp., ¶¶ 137-138)

18

As to Sterrett's claim that he did not have the opportunity to confront the Complainant, it is clear from the Complaint that he knew the identity of the Complainant and also the identity of the witnesses, in light of Sterrett's submissions of affidavits rebutting Cowan's findings.  However, confronting the Complainant, let alone other witnesses, is not an absolute right and is generally not part of the due process requirement in a school disciplinary setting.  *Flaim*, 418 F.3d at 636; *Granger,* 197 F. Supp. 2d at 875, n. 1; *Jaksa*, 597 F. Supp. at 1253.

The Court concludes, after reviewing the non-conclusory factual allegations in the Complaint, Sterrett fails to state a due process claim upon which relief may be granted as to his claim that he did not have the opportunity to "respond, explain, and defend" the misconduct alleged after August 6, 2012 or that he was unable to confront the Complainant.  However, Sterrett sufficiently alleges facts to state a Due Process claim that he was denied a "meaningful hearing" prior to Cowan's November 30, 2012 Final Report and Findings.

### C.    First Amendment Claim (Count II)

Defendants argue that Sterrett's claim that Defendants Cowan, Vander Velde and Wilgus violated his First Amendment free speech rights by instructing him not to talk to other witnesses about the case fails to state a claim upon which relief may be granted.  They argue that this is common practice in criminal and other

19

investigations and it has the salutary effects of maintaining the integrity of witness testimony and avoiding witness intimidation or harassment, citing *Jaksa*, 597 F. Supp. at 1252 (recognizing the need for anonymity of student accusers, who might otherwise be the victim of reprisals from fellow students). Defendants assert that school officials have the authority to maintain the discipline and learning environment necessary to accomplish the school's education mission and that student speech rights at times must yield to the rights of other students to be secure and to be let alone, citing *Barr v. Lafon,* 538 F.3d 554, 562 (6th Cir. 2008). In any event, Defendants argue that Sterrett did in fact approach and contact witnesses as alleged in his Complaint.

Sterrett claims he alleges a cognizable claim by pleading the terms of the "no discussion" order and alleging there was no danger posed by his associations and speech. Sterrett asserts that the order prohibiting him from talking to witnesses was prior restraint, citing *Nightclubs, Inc. v. City of Paducah,* 202 F.3d 884, 889 (6th Cir. 2000)(overruled on other grounds, *729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485, 498 (6th Cir. 2008)).

The Supreme Court has held that university students enjoy First Amendment rights of speech and association on the campus. *Healy v. James,* 408 U.S. 169, 181 (1972). However, Supreme Court cases have recognized that First Amendment

20

rights must be analyzed "in light of the special characteristics of the school environment." *Tinker v. Des Moines Ind. School Dist.*, 393 U.S. 503, 506 (1969). The power of the government to prohibit "lawless action" is not limited to acts of a criminal nature, but also acts which "materially and substantially disrupt the work and discipline of the school." *Id.* at 513. A university differs in significant respects from public forums such as streets or parks or even municipal theaters. *Windmar v. Vincent*, 454 U.S. 263, 268 n. 5 (1981). "A university's mission is education, and decisions of this Court have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities." *Id.*

A prior restraint exists when speech is conditioned upon the prior approval of public officials, such as denial of use of public forum without procedural safeguards. *Nightclubs,* 202 F.3d 884 at 889. In the context of municipal licensing law, ordinance or statute, prior restraints are presumptively invalid because they typically involve two evils that will not be tolerated: 1) the risk of censorship associated with the vesting of unbridled discretion in government officials; and 2) the risk of indefinitely suppressing permissible speech when a licensing law fails to provide for the prompt issuance of a license. *Id.* In *Forsyth County v. Nationalist Movement,* 505 U.S. 123 (1992), the United States Supreme Court found

unconstitutional a city ordinance which required groups to pay a license fee as a condition to engaging in demonstrations on public lands.  505 U.S. at 126-27.  The Supreme Court concluded that the ordinance was not content-neutral because the fee assessed depended on the administrator's measure of the amount of hostility likely to be created by the speech based on its content.  *Id.*  Prior restraints on speech are disfavored and carry a "heavy presumption" of invalidity.  *Id.* at 130. The relevant question is whether a challenged regulation authorizes suppression of speech in advance of its expression.  *Id.*  It is well recognized that an ordinance which grants an administrative body or government official unfettered discretion to regulate the licensing of activities protected by the First Amendment is unconstitutional.  *Kunz v. New York,* 340 U.S. 290, 294 (1951).  Such unrestricted discretion increases the likelihood that the government official may discriminate based upon the content of the "speech" or the viewpoint of the speaker.  *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 763-64 (1988).

In a claim involving restraint on speech in a public forum, courts use a three-part test to evaluate a First Amendment claim: 1) whether the speech is protected; 2) the nature of the forum where the speech is to occur and the proper standard for restrictions in that forum; and 3) whether the government justification satisfies the applicable standard for the forum.  *Cornelius v. NAACP Legal Defense & Educ.*

*Fund*, 478 U.S. 788, 797 (1985).  In examining whether property constitutes a public forum, the Supreme Court has made it clear that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government."  *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).  In determining the nature of the forum, courts look to the traditional use of the property, the objective use and purposes of the space, the government intent and policy with respect to the property, and its physical characteristics and location.  *Cornelius*, 473 U.S. at 802.

Sterrett's First Amendment claim that Defendants' instructions prohibiting him from speaking with other witnesses regarding the investigation fails to state a claim upon which relief may be granted.  In a criminal case setting, courts generally instruct defendants and others involved in the case not to contact any other co-defendants and witnesses in the case.  *See, e.g., United States v. Henry*, 2001 WL 1680254, * 6 (E.D. Mich. 2001).  As noted above, in the university context, a student is not entitled to all of the procedural safeguards afforded criminal defendants and that notice as to the identity of an accuser or the opportunity to cross-examine an accuser is not part of the due process requirement. *Granger,* 197 F. Supp. 2d at 875, n. 1; *Flaim,* 418 F.3d at 635, n. 1.  Where a school is dealing with allegations of sexual misconduct, the school's interest in

23

preserving campus safety is strong.  *See Bonnell v. Lorenzo,* 241 F.3d 800, 823 (6th Cir. 2001).  Sterrett's citation to the Sixth Circuit case of *Nightclubs, supra*, is inapplicable since in that case, a city's licensing ordinance prohibiting certain adult entertainment was at issue.  Here, no such ordinance enacted by the state is at issue.

As to any claim by Sterrett that his speech was retrained from the public forum, given that in a criminal case setting, courts generally instruct parties not to speak to witnesses and other defendants or parties, and given that Sterrett is in a university setting, Sterrett has failed to state a plausible claim that the "no contact" instruction by Defendants is speech that is protected.  In addition, the First Amendment does not guarantee Sterrett access to property owned by the University, therefore, Sterrett has failed to state a claim that he was restrained from a public forum.  *Perry,* 460 U.S. at 46.

In any event, the factual allegations in Sterrett's Complaint show that he was able to obtain affidavits from various witnesses, including other students at the University, which were submitted to Defendants during the review process. (Comp., ¶ 131)  Sterrett's Complaint also shows that Defendants acknowledged and considered the affidavits of the witnesses in their review.  (Comp., ¶¶ 144-47) Based on a review of the non-conclusory factual allegations in Sterrett's Complaint

24

as to his First Amendment claim, Sterrett fails to state a plausible claim against Defendants under the First Amendment as to Defendants' "no discussion" instruction to Sterrett.

### D.   Qualified Immunity

#### 1.   Clearly Established

Defendants argue that Defendants are entitled to qualified immunity since they did not violate Sterrett's constitutional rights and that the rights alleged and procedures sought by Sterrett are not "clearly established." In response, Sterrett argues that the rights he asserts are clearly established and that Defendants are not entitled to qualified immunity.

The Eleventh Amendment precludes suits in federal court for monetary damages against state entities. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44 (1996). The Eleventh Amendment does not bar § 1983 actions brought against state officials in their official capacities seeking prospective injunctive relief. *Williams v. Commonwealth of Ky.*, 24 F.3d 1526, 1544 (6th Cir. 1994). Claims against public universities and university officials acting in their official capacities are considered actions against the state for purposes of the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21 (1991).

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*  "When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quoting *Back v. Hall*, 537 F.3d 552, 555 (6th Cir. 2008)).

The Supreme Court in *Saucier* instituted a two-step sequential inquiry to determine qualified immunity.  In *Pearson v. Callahan,* 555 U.S. 223 (2009), the Supreme Court abandoned the requirement that the inquiry must be performed sequentially.  Although courts are free to consider the questions in whatever order

26

is appropriate, the Supreme Court ruled that the two questions announced in *Saucier* remain good law and that it is often beneficial to engage in the two-step inquiry. *Pearson,* 555 U.S. at 236.

The first step of a three-step inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, do the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201.

If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. "Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009) (citations omitted). The "clearly established" rights allegedly violated by the official cannot be considered at an

27

abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The third step is to determine whether the facts alleged indicate that what the official did was objectively unreasonable in light of clearly established constitutional rights. *Gaspers v. Ohio Dep't of Youth Serv.*, 648 F.3d 400, 412 (6th Cir. 2011). "Reasonableness" is a question of law to be decided by the trial court. *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993). Once the defense of qualified immunity is raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Roth v. Guzman*, 650 F.3d 603, 609 (6th Cir. 2011).

In 2005, the Sixth Circuit acknowledged that a university student has a property interest in continuing his studies. *Flaim*, 418 F.3d at 633. Based on the above analysis, Sterrett stated Due Process Clause claims that he did not receive notice of the misconduct charge against him *prior* to the August 6, 2012 interview with Cowan and that he was denied a "meaningful hearing" prior to Cowan's November 30, 2012 Final Report and Findings. Sterrett has stated these two constitutional claims.

Sterrett must also show that these rights were "clearly established." As discussed above, the right to notice may be informal or formal, depending on the

situation.  The Sixth Circuit in *Flaim* noted that notice "need not take on many of those formalities" as in a criminal setting, but that it depends on what the accused is charged with and the list of possible penalties which "may" require more formal procedures.  *Flaim*, 418 F.3d at 635.  "All that is required by the Due Process Clause, which sets a floor or lower limit on what is constitutionally adequate, is 'sufficient notice of the charges ...'" *Id.* at 639.  The investigation by the University involved a sexual misconduct claim by another student against Sterrett, which Sterrett alleges is "of the utmost seriousness" and involves "lifelong ramifications and are quasi-criminal in nature."  (Comp., ¶ 162)  The possible potential discipline includes immediate suspension from the University until 2016 and a permanent sexual misconduct finding on Sterrett's educational record.  (Comp., ¶ 134)

As to a "meaningful hearing," it may be formal, informal, live or not, but must provide the accused with the opportunity to "respond, explain, and defend." *Flaim*, 418 F.3d at 635.  "If the hearing is live, the accused has a right to be present for all significant portions of the hearing." *Id.*  The right to respond and defend generally includes the opportunity to make a statement and present evidence, and "may" also include the right to call exculpatory witnesses, and, in "some circumstances" may require the opportunity to cross-examine witnesses in the most

29

serious cases. *Id.* at 636. Although Sterrett asserts in his Complaint that he and his representative or counsel submitted various writings and affidavits to the University to support his arguments, he claims no "hearing" was held (even though he "met" with Vander Velde on December 6, 2012 indicating "he was innocent and a terrible mistake had been made"). (Comp., ¶¶ 90, 117, 166) As noted above, Sterrett alleges that the claim of sexual misconduct against him is of the "utmost seriousness." (Comp., ¶ 162) Sterrett alleges that Cowan did not address his request to be heard prior to the issuance of the November 30, 2012 Final Report and Findings. (Comp., ¶¶ 89-93)

Based on the set of circumstances involving the sexual misconduct claim against Sterrett and possible penalties alleged by Sterrett in his Complaint, Sterrett has stated sufficient facts to support his claim that his rights to a more formal notice prior to the August 6, 2012 interview with Cowan and a more formal meaningful hearing prior to Cowan's November 30, 2012 Final Report and Findings were clearly established under the Due Process clause.

Whether the individual Defendants acted as "reasonable officials" under the circumstances in this case, because the "contours" of the rights noted above are clearly established and that the Due Process Clause is a "floor" of those rights, a reasonable official in the shoes of Defendants in this case (as more specifically

noted below) would understand that their actions violated Sterrett's right to Due Process. *See Anderson,* 483 U.S. at 639. The Court finds Sterrett has stated claims under the Due Process Clause for lack of notice prior to the August 6, 2012 interview and lack of a meaningful hearing prior to Cowan's November 30, 2012 Final Report and Findings.

### 2.    Individual Defendants

Having concluded that Sterrett stated sufficient facts to establish that the rights under the Due Process clause were violated as noted above, the Court must now examine each individual defendant's actions, as alleged in the Complaint, to determine if his or her actions violated the Constitution. "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must establish each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 (emphasis added). A plaintiff claiming violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011). Blanket acts alleged against all individual defendants cannot be ascribed to each individual defendant. *Id.* In the context of the remaining Due Process claims as to notice prior to the August 6, 2012 interview and lack of meaningful hearing prior to the

issuance of the November 30, 2012 Final Report and Findings, the Court reviews the Complaint to determine whether there are sufficient facts alleged as to these two asserted rights against each individual Defendant.

Sterrett sufficiently alleged plausible facts against Cowan that the lack of notice prior to the August 6, 2012 interview and lack of hearing were violated by Cowan. Cowan was the individual who scheduled and conducted the August 6, 2012 interview with Sterrett and is alleged not to have given Sterrett any notice of the specific allegations against him. (Comp., ¶¶ 27-31) The facts also allege that Sterrett requested "a chance to be fully heard," but that Cowan did not address Sterrett's request to be heard before Cowan issued the Final Sexual Misconduct Investigation Report on November 30, 2012. (Comp., ¶¶ 90-93) Cowan is not entitled to qualified immunity.

The facts alleged as to Wilgus, the Director of the Office of Student Conflict Resolution, fail to state a lack of notice or lack of hearing Due Process claims against him. The facts only allege that Wilgus approved Cowan's investigation. (Comp., ¶ 179) This fact is insufficient to state a claim against Wilgus that he violated Sterrett's Due Process right to notice prior to the August 6, 2012 interview or a meaningful hearing. Wilgus is entitled to qualified immunity.

32

As to Vander Velde, the specific facts allege that Sterrett "met" Vander Velde on December 6, 2012 and that Sterrett "told Vander Velde that he was innocent and a terrible mistake had been made." (Comp., ¶ 117) Vander Velde is also alleged to have approved Cowan's investigation and "provided" Sterrett with a proposed "Resolution Agreement." (Comp., ¶ 179) These alleged facts against Vander Velde fail to state a Due Process claim as to lack of notice or lack of a meaningful hearing. Although Sterrett "met" with Vander Velde on December 6, 2012, there are no facts alleged that the meeting itself was the "hearing" Sterrett asserts he was entitled to prior to Cowan's November 20, 2012 Final Report and Findings. Qualified immunity applies to Vander Velde.

Spencer, Pritzel and Senja were members of the Appeals Board which considered Sterrett's appeal of the disciplinary action taken against him. (Comp., ¶¶ 8-10) These allegations fail to state a claim that Spencer, Pritzel and Senja violated Sterrett's Due Process right to notice or meaningful hearing. Spencer, Pritzel and Senja are entitled to qualified immunity.

Royster-Harper, the Vice President for Student Affairs at the University, is alleged to have upheld Cowan's Report and Findings. (Comp., ¶ 11) Royster-Harper issued the sanctions against Sterrett on February 1, 2013, suspending Sterrett until July 2016. (Comp., ¶ 137) Royster-Harper is also alleged to have

33

approved the sanctions without any analysis and to have ignored the due process violations. (Comp., ¶ 138) These factual allegations are insufficient to show that Royster-Harper violated Sterrett's Due Process right to notice or a meaningful hearing. Royster-Harper is entitled to qualified immunity.

Matney is the Resolution Officer at the University. (Comp., ¶ 12) Matney is alleged to have "decided" the proposed "Resolution Agreement" provided to Sterrett on January 10, 2013. (Comp., ¶ 134) Matney is alleged to have failed to consider the lack of evidence and illogical conclusions in Cowan's Report and Findings. (Comp., ¶ 135) Matney is also alleged to have approved the sanctions without any analysis and ignored the due process violations. (Comp., ¶ 138) The alleged facts fail to state a claim against Matney for violations of Sterrett's Due Process right to notice or a meaningful hearing. Matney is entitled to qualified immunity.

Walesby is the Senior Director of the Office for Institutional Equality, Associate Provost for Academic and Faculty Affairs, OSCR Director and Title IX Coordinator at the University. (Comp., ¶ 13) There are no factual allegations in the Complaint that Walesby is alleged to have violated Sterrett's Due Process right to notice or a meaningful hearing. Qualified immunity applies to Walesby.

Blake-Jones is the Dean of Students at the University.  (Comp., ¶ 14) Blake-Jones is alleged to have "decided upon" the proposed Resolution Agreement provided to Sterrett on January 10, 2013.  (Comp., ¶ 134) Blake-Jones is further alleged to have failed to consider the lack of evidence and illogical conclusions reached in Cowan's Reports and Findings.  (Comp., ¶ 135) Blake-Jones is also alleged to have approved the sanctions without analysis and ignored the due process violations.  (Comp., ¶ 138) These factual allegations against Blake-Jones fail to state a violation of Sterrett's Due Process right to notice or hearing.  Blake-Jones is entitled to qualified immunity.

## III.   MOTION TO AMEND COMPLAINT

Sterrett seeks to amend the Complaint to add a claim under Title IX and Michigan's Elliot-Larsen Civil Rights Act.   Defendants respond that the amendment is futile.

Rule 15(a) provides that a party may amend its pleading once as a matter of course within 21 days after serving the pleading or within 21 days after service of a motion under Rule 12(b).  Fed. R. Civ. P. 15(a)(1).  Rule 15(a)(2) further provides that a party may amend its pleading with written consent from the opposing party or by leave of court.  Fed. R. Civ. P. 15(a)(2).  Leave shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  A district court may deny leave to

amend in cases of undue delay, undue prejudice to the opposing party, repeated failure to cure deficiencies by amendment previously allowed or futility. *Foman v. Davis,* 371 U.S. 178, 184 (1962). If a complaint cannot withstand a motion to dismiss under Rule 12(b)(6), the motion to amend should be denied as futile. *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

Title IX states in pertinent part, "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ..." 20 U.S.C. § 1681(a). Title IX claims against universities arising from disciplinary hearings are analyzed under the "erroneous outcome" standard, "selective enforcement" standard, "deliberate indifference standard" and "archaic assumptions" standard. *Mallory v. Ohio Univ.*, 76 Fed. Appx. 634, 638 (6th Cir. 2013). To support a claim of erroneous outcome or selective enforcement under Title IX, a male plaintiff must demonstrate that the conduct of the university in question was motivated by a sexual bias and, in this case, that a female student was in circumstances sufficiently similar to plaintiff and was treated more favorably by the university. *Id.* at 641; *Doe v. University of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009) (A Title IX and Clery Act complaint dismissed under Rule 12(b)(6)). Under a "deliberate indifference"

36

standard, a plaintiff must show that an official of the institution who had the authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct. *Mallory,* 76 Fed. Appx. at 641. The "archaic assumptions" standard is where a plaintiff seeking equal opportunities has the burden to show that a university's discriminatory actions resulted "from classifications based upon archaic assumptions." *Id.* The court's review of the university's decision is substantially circumscribed; the law does not allow the court to retry the university's disciplinary proceeding. *Doe,* 687 F. Supp. 2d at 755.

Gender discrimination under the education provisions under the Elliot Larsen Act, M.C.L. § 37.2402, follows the analysis of a *prima facie* case of discrimination under the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Pruitt v. Michigan State University,* 2011 WL 1600499, *3 (Mich. App. Apr. 28, 2011). A male student must then show that the male student was treated differently from a similarly situated female student. *Id.* at 4.

Sterrett's proposed Amended Complaint seeks to add as a Defendant the Regents of the University of Michigan alleging that the University engaged in gender discrimination under Title IX and the Elliot Larsen Civil Rights Act.

37

(Motion, Doc. No. 35, ¶¶ 5-6) Sterrett alleges that "[b]ased on Plaintiff's gender there was a rush to judgment against him, in spite of the evidence and facts, leading to an erroneous outcome" and that Defendants "were predisposed to discriminate against Plaintiff in a sexual misconduct investigation on the basis of his sex."    (Proposed Am. Comp., ¶¶ 210-11) Sterrett further alleges that "Defendants treated Plaintiff differently and less favorably with respect to his rights during the investigation on the basis of his sex, as compared to his female accuser."    (Proposed Am. Comp., ¶ 215) Sterrett claims that "Defendants intentionally ignored the requirement that the Complainant carried the burden of proof and instead shifted it to Plaintiff, on the basis of his gender." (Proposed Am. Comp., ¶ 219)

Sterrett's allegations regarding gender bias under Title IX or Elliott Larsen are conclusory and do not allege specific factual allegations which would state a claim of discriminatory animus by the University or its agents.  Sterrett claims that Defendants' actions were in response to a 2011 "Dear Colleague" letter from the U.S. Department of Education stating that acts of sexual violence are vastly under reported and that young women in college, nearly 20%, will be victims of attempted or actual assault, which Sterrett claims are now highly disputed and an extrapolated figure.  (Proposed Am. Comp., ¶ 209) It appears that Sterrett in citing

the "Dear Colleague" letter is asserting that the University was biased against Sterrett based on this letter sent by the U.S. Department of Education when the University performed its investigation of the sexual misconduct claim against Sterrett.  However, under a gender bias claim, Sterrett has not sufficiently shown facts that this "Dear Colleague" letter motivated Defendants to discriminate against Sterrett because of his gender.  The "Dear Colleague" letter is a guidance document issued by the U.S. Department of Education pursuant to its regulatory authority under 72 Fed. Reg. 3432.  Sterrett's conclusory allegation that Defendants were induced by the "Dear Colleague" letter to discriminate against him because of his gender fails to state a claim under Title IX or Elliot Larsen.

Sterrett's proposed allegations under Title IX and Elliott Larsen fail to identify any female counterpart, other than Complainant, who was treated more favorably than Sterrett.  The allegations in the Proposed First Amended Complaint only allege that because of the evidence before Defendants, Defendants should have found in favor of Sterrett.  There are no non-conclusory factual allegations in the proposed First Amended Complaint to state a claim that Defendants were biased against Sterrett because of his gender.  The conclusory allegations in the proposed First Amended Complaint that Defendants were biased against Sterrett because of his gender fail to state a claim of gender bias under Title IX or Elliot

39

Larsen.  Amending the Complaint to allege gender bias under Title IX or Elliot Larsen would be futile.

## IV.    MOTION TO COMPEL COMPLETE DEPOSITION TESTIMONY

Sterrett seeks an order compelling non-party witness C.B. to fully respond to questions at a deposition.  Non-party C.B. responds that the deposition is beyond the scope of discovery as to the claims alleged in this case and the deposition is not calculated to lead to the discovery of any admissible evidence.  Non-party C.B. claims that the deposition is harassing and oppressive.  Non-party C.B. asserts that Sterrett's Due Process claim is limited to whether Defendants' processes were constitutional and the Court is not permitted to review the outcome of the process. Defendants filed a concurrence to non-party C.B.'s response.

As to a Due Process claim, the Court is "limited to determining whether the procedures used by" a university "were constitutional." *Flaim*, 418 F.3d at 638. Discovery of matters not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1).  *Lewis v. ACB Business Serv., Inc.,* 135 F.3d 389, 402 (6th Cir. 1998).  Denial of discovery is proper as to dismissed claims or to proposed amended claims which were denied. *Id.*  Because the Court ruled above that the Due Process claims remaining are whether Sterrett received notice prior to the August 6, 2012 and lack of a

meaningful hearing prior to November 30, 2012 against Cowan only, any discovery relating to non-party witness C.B. is not relevant to the Due Process claims against Cowan.    The Court denies Sterrett's Motion to Complete Deposition.

## V.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Dismiss (**Doc. No. 18**) is GRANTED IN PART and DENIED IN PART as set forth above.

IT IS FURTHER ORDERED that the following Defendants are DISMISSED with prejudice under Count I, 42 U.S.C. § 1983-Fourteenth Amendment Due Process:  Jay Wilgus, Stacy Vander Velde, Theodore Spenser, Susan Pritzel, Mikiko Senja, E. Royster-Harper, Malinda Matney, Anthony Walesby and Laura Blake-Jones.   Heather Cowan remains as a defendant under Count I.  The remaining claim in Count I is a violation of Due Process relating to lack of notice prior to August 6, 2012 and lack of meaningful hearing prior to November 30, 2012.

IT IS FURTHER ORDERED that Count II, 42 U.S.C. § 1983-First Amendment Free Speech, is DISMISSED with prejudice as to all Defendants.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Amended Complaint (**Doc. No. 35**) is DENIED.

IT IS FURTHER ORDERED that the Motion to Compel Complete Deposition Testimony (**Doc. No. 48**) is DENIED.

IT IS FURTHER ORDERED that the Order Referring the Motion to Amend Complaint to the Magistrate Judge (**Doc. No. 42**) and Order Referring Motion to Compel Complete Deposition (**Doc. No. 49**) are RESCINDED.  The Appeal of the Magistrate Judge's decision holding in abeyance the Motion to Amend Complaint (**Doc. No. 75**) pending this Court's ruling on the Motion to Dismiss is MOOT, the Court having rescinded the Reference and having ruled on this motion.

IT IS FURTHER ORDERED that a Scheduling Conference is set for **Monday, March 9, 2015, 2:30 p.m.**

> S/Denise Page Hood
> Denise Page Hood
> United States District Judge

Dated:  February 4, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 4, 2015, by electronic and/or ordinary mail.

> S/LaShawn R. Saulsberry
> Case Manager

42